**Saul Ruis MALDONADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00296–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 22, 1999.

Rehearing Overruled Aug. 19, 1999.

David R. Bires, Houston, for appellants.

Julie Klibert, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

## OPINION

PAUL C. MURPHY, Chief Justice.

Appellant was charged by indictment with the offense of possession with intent to deliver a controlled substance, namely cocaine, in an amount over 400 grams. The trial court originally set bail in the amount of $10,000,000.00. Appellant filed an application for pre-trial writ of habeas corpus seeking a reduction of bond. After a hearing on appellant's application, the trial court reduced the amount of bond to $2,500,000.00, an amount greater than the reduction requested by appellant. In a single point of error, appellant contends the bond set by the trial court, though

reduced, is oppressively high and violates his rights under the United States and Texas Constitutions. We affirm.

## I. The Applicable Law

■■■ The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex.Crim.App. [Panel Op.] 1980); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.). Bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument of oppression. *See Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex.Crim.App. 1980); *See Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex.Crim.App.1977); *Brown*, 959 S.W.2d at 371. The burden is on the person seeking the reduction to demonstrate that the bail set is excessive. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App. [Panel Op.] 1980); *Brown*, 959 S.W.2d at 371. *See also Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim.App.1993) (holding that burden is upon writ applicant to establish entitlement to relief); *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex.Crim.App.1985) (same); *Ex parte Alt*, 958 S.W.2d 948, 950 (Tex.App.—Austin 1998, no pet.) (same). The decision regarding a proper bail amount lies within the sound discretion of the trial court. *See Ex parte Green*, 940 S.W.2d 799, 801 (Tex.App.—El Paso 1997, no pet.); *Smith v. State*, 829 S.W.2d 885, 887 (Tex.App.—Houston [1st] 1992, pet. ref'd); *Brown*, 959 S.W.2d at 372. *See also Ex parte Ayers*, 921 S.W.2d 438, 440 (Tex.App.—Houston [1st] 1994, no pet.) (holding that decision to grant or deny habeas relief is matter of discretion and exercise of discretion will not be disturbed on appeal without clear abuse).

■■■ While the decision to set bail in a certain amount or reduce bail is within the trial court's discretion, the trial court is required, however, to consider certain criteria in making a bail determination. Article 17.15 provides:

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex.Code Crim. Proc. Ann. art. 17.15 (Vernon Supp.1999). In addition to considering the factors in article 17.15, the courts have held there are seven additional factors to be weighed in determining the amount of bond: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex.Crim.App. [Panel Op.] 1981). Though *Rubac* involved the setting of an appeal bond after conviction, several courts have applied the *Rubac* factors in the review of cases involving pre-trial bail. *See Ex parte Emery*, 970 S.W.2d 144, 145 (Tex. App.—Waco 1998, no pet.); *Brown*, 959 S.W.2d at 372; *Smith v. State*, 829 S.W.2d 885, 887 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). We, too, find the *Rubac* factors appropriate to review a trial court's pre-trial decision to set bail, to refuse to

reduce bail, or to refuse to reduce it to the amount requested by the applicant.

## II. The Evidence

During the hearing, the trial court received testimony from five witnesses. The only witness called by the State, Abel Casas, is an investigator for the Harris County District Attorney's Office. Casas testified that the wholesale value of one kilogram of cocaine is $16,000.00, and the street value of one kilogram is $100,000.00. The State asked the trial court to take judicial notice of the indictment filed against appellant. That indictment alleges appellant possessed, with intent to deliver, 721 kilograms of cocaine. Based on the amount of drugs allegedly possessed by appellant and the value of cocaine as testified to by Casas, the drugs allegedly possessed by appellant had a value of either $11,535,000.00, wholesale value, or $72,100,000.00, street value.

Appellant called four witnesses. The first witness, Juan Cedeno, testified he was a friend of appellant and had known him for eight years. When asked whether he believed that appellant would flee to avoid the pending charges, Cedeno stated, "I don't think so." On cross-examination by the State, Cedeno admitted that appellant is from Puerto Rico and has only lived in Texas for a "short time." The second witness, Josefa Sanchez, stated she had known appellant for fifteen years and opined that if his bond were reduced, appellant would return to court as required. On cross-examination, she too admitted that it was possible appellant has lived in Texas for less than a year.

Appellant next called Leopolda Cedeno. She testified that appellant was her "mate," but they were not legally married. She stated they had been together for approximately nine or ten years and have two children, ages four and eight. Ms. Cedeno stated she is Dominican and appellant is Puerto Rican. She also stated she has only lived in Houston for six months and appellant has lived here a few months

longer than that. Before moving to Houston, the couple lived in New York for eight or nine years. Ms. Cedeno testified that while appellant has done carpentry and cleaned carpets in the past, he currently has no job.

Ms. Cedeno was then asked about the couple's finances. She stated the couple has two cars, but no real estate, no stocks, no bonds, no life insurances policies with a cash surrender value, and no investment or retirement accounts. Ms. Cedeno stated the couple has no checking account, and their savings account has $60.00 or less in it. She testified that she could only raise approximately $8,000.00 to $9,000.00 for bail. At the end of her testimony, appellant's counsel asked Ms. Cedeno if appellant would show up in court as required if the court lowered his bail. In response, Ms. Cedeno stated, "Yes, I think so, yes." When asked if appellant would flee if his bail were lowered, she stated, "No, I don't think so." On cross-examination, Ms. Cedeno admitted she was unemployed.

As his last witness, appellant called Edd Blackwood, a Harris County bail bondsman. Blackwood testified that he has been a bondsman in Harris County since 1979 and is familiar with the bonding practices in the county. He stated that the amount of bond a bondsman can put up is based on the amount of money the bondsman has "put up" with Harris County. He testified that the largest bond he can write is $100,000.00. He also stated that the upper limit that any bonding company in Harris County can put up is $500,000.00. He concluded by stating that a bond over $500,000.00 was the equivalent of "no bond" in this county. On cross-examination, Blackwood admitted he was "very familiar" with the high incidence of recent bond forfeitures in large narcotics bond cases. He admitted he had a $300,000.00 bond forfeited in a drug case. He also stated that he could not insure the appearance of anyone for whom he provided bond.

## III. Application of the Law to the Evidence

Keeping in mind that it is appellant's burden to demonstrate that the bail set is excessive, we will now review the evidence in light of the *Rubac* factors and those listed in article 17.15.

### A. Sufficient Bail to Assure Appearance and Bail As Instrument of Oppression

■ In this case, the evidence shows that appellant is a native of Puerto Rico and his "mate" is a native of the Dominican Republic. Appellant, by the testimony of his own witnesses, has been in Harris County for less than one year. He has no family here other than his "mate" and two children less than nine years of age. Appellant owns no real estate in Harris County. Neither appellant nor his "mate" are employed. Two of his witnesses were less than convincing in their testimony concerning the chances of appellant absconding if his bond were lowered. Juan Cedeno stated he "didn't think" appellant would flee. Appellant's "mate" provided a similar response.

In sum, there is absolutely nothing to assure that appellant would appear if his bail were significantly reduced. Neither appellant nor his mate have any real ties to Harris County: (1) neither is employed; (2) they have no relatives here; (3) they own no real property; (4) both are originally from outside the continental United States; and (4) the family has lived in Harris County for less than a year. Given this evidence, there is nothing oppressive about the trial court's decision to set a significant bond.

### B. Nature of the Offense

■ The amount of bail must also be based on the nature of the offense and the circumstances under which it was committed. *See Ex parte Davila*, 623 S.W.2d 408, 409–10 (Tex.Crim.App. [Panel Op.] 1981); *Brown*, 959 S.W.2d at 372. In considering the nature of the offense, it is proper to consider the possible punishment. *See Charlesworth*, 600 S.W.2d at 317; *Vasquez*, 558 S.W.2d at 480; *Brown*, 959 S.W.2d at 372.

■ Appellant is charged with possessing, with intent to deliver, 721 kilograms of cocaine. As we noted above, these drugs have a value of between eleven and seventy-two million dollars, depending on how the drugs are packaged and sold. The bond set by the trial court, $2,500,000.00, is significantly less than the lowest value of the drugs allegedly possessed by appellant.

The range of punishment for the offense with which appellant is charged in confinement in the Texas Department of Criminal Justice—Institutional Division for a term of 15 to 99 years, and a fine not to exceed $250,000.00. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (Vernon Supp. 1999). Clearly, if convicted, appellant faces a considerable penalty.

Appellant relies on *Ludwig v. State*, 812 S.W.2d 323 (Tex.Crim.App.1991), a capital murder case, to support his contention that the bond set by the trial court is unreasonable. In that case, the trial court set the defendant's bond at $2,000,000.00. *See id.* at 324. On appeal, the court of appeals found the bond excessive and reduced it to $1,000,000.00. *See id.* The Court of Criminal Appeals found the $1,000,000.00 bond excessive as well and further reduced the bond to $50,000.00. *See id.* at 325.

In reaching its decision, the court pointed out, as had the court of appeals, that the evidence relevant to the factors of article 17.15 weighed in favor of a reduced bond. Specifically, the courts noted the defendant: (1) was a long-time resident of Texas (2) owned real property in the State; (3) held a license to practice veterinary medicine in Texas and had such a practice in the Katy, Texas; (4) had several close relatives, also long-time Texas citizens, willing to sign an appearance bond; (5) was currently involved in a child custody proceeding in Harris County that would require his presence; and (6) had his as-

sets frozen by a temporary court order issued in connection with his divorce. *See id.* at 324. The court concluded that both the trial court and the court of appeals had placed too much emphasis on the future safety of other potential victims in light of the evidence relevant to the other factors listed in article 17.15. *See id.* at 325.

Clearly, the facts relied on by the court in *Ludwig* are distinguishable from those presented in this case. As we have already noted, appellant, unlike the defendant in *Ludwig*, has no significant ties to the county or even to the State. The only commonality we see between the two cases is that both defendants were charged with serious offenses. If anything, *Ludwig* actually supports the trial court's decision to set a high bail considering the little assurance presented that appellant would remain in Harris County if his bail were reduced, given his lack of ties to the community and the nature of his alleged offense.

Finally, we note that cases involving illegal transportation and sale of drugs are unique. In such cases, a higher bond may be required because of the very nature of the offense. *See Ex parte Willman*, 695 S.W.2d 752, 753 (Tex.App.— Houston [1st Dist.] 1985, no pet.); *See Ex parte Martinez–Velasco*, 666 S.W.2d 613, 616 (Tex.App.—Houston [1st Dist.] 1984, no pet.). The illegal manufacture, transportation, and sale of large quantities of drugs usually require multiple transactions of a transitory nature. *See Martinez–Velasco*, 666 S.W.2d at 616. By the very nature of the operation, participants in the transport and sale of illegal drugs must be highly mobile. *See id.* Moreover, the large amount of cash required to effect these kinds of transactions suggests involvement of monied backers who may consider the cost of bail as a normal business expense, which they may be willing to forfeit and write off as one of the costs of doing this type of business. *See id.; Willman*, 695 S.W.2d at 753. Thus, in cases involving large quantities of illegal drugs, such as this case, a much higher bond may be required to assure the presence of the defendant at trial.

## C. Ability to Make Bail

Appellant presented evidence that he cannot make the bond set by the trial court. He presented testimony to the effect that he could raise funds sufficient to make bail in the amount of $100,000.00. The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex.Crim.App. [Panel Op.] 1980); *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd); *Brown*, 959 S.W.2d at 372. If the ability to make bond in a specified amount controlled, the role of the trial court in setting bond would be unnecessary and the accused would be able to set his own bond. *See Miller*, 631 S.W.2d at 827.

Appellant also presented evidence from a local bondsman that any bond over $500,000.00 was the equivalent of "no bond." The issue of whether bail can be set above the amount that any bondsman is able to post was recently addressed by the First Court of Appeals. *See Wright v. State*, 976 S.W.2d 815 (Tex.App.—Houston [1st Dist.] 1998, no pet.). We agree there is no reason not to treat the ability of a bail bondsman to post bond for the appellant as part of the general ability to make bail under article 17.15. *See id.* at 820. Like an accused's inability to post bond, the ability of a bail bondsman to post bond should not be a controlling factor for the fixing of bail by the trial court. *See id.* We too "decline to set an artificial cap on the amount a trial court can set as bail that is dependent on the ability or willingness of a bail bondsman to put up funds to write bonds in certain amounts." *Id.*

## D. Future Safety of the Community

There was no evidence presented concerning any physical threat appellant

might pose to any individual or to the community. It is, however, a matter of common sense that those who possess illegal drugs with the intent to deliver in the quantities present in this case effect the community in which they live. Possession and distribution of dangerous narcotics cannot be ignored in analyzing the safety of the community relevant to bail determinations.

### E. The *Rubac* Factors

 The *Rubac* court listed seven factors, in addition to those stated in article 17.15, to be considered in bond determinations. 611 S.W.2d at 849–50. Some are similar to those listed in article 17.15.

The first factor is appellant's work record. In this case, the evidence presented by appellant shows no work record. Appellant's "mate" testified that he used to do carpentry and carpet cleaning, but presently he is not employed. The second factor is appellant's family and community ties. As we have already discussed, appellant has no ties to this community and neither does anyone in his family. The third factor is appellant's length of residency. This factor does not weigh in appellant's favor because his own evidence proves that he has been in the area for less than a year. The fourth factor, appellant's prior criminal record, if any, cannot be considered. There was no evidence as to whether appellant does or does not have a prior record. The burden was on appellant to show he was entitled to bail reduction. If he has no prior criminal record, he should have produced evidence to that effect. The fifth and sixth factors to be considered are appellant's conformity with the conditions of previous bonds, if any, and the existence of outstanding bonds, if any. Like the fourth factor, no evidence was presented on these factors. Finally, we must look at the aggravating circumstances alleged to have been involved in the charged offense. In this case, the aggravating circumstance is the quantity and value of the drugs appellant is alleged to have possessed and intended to distribute, 721 kilograms of cocaine worth millions of dollars. As we stated before, without sufficient bond, a merchant of this quantity may forfeit bond and write it off as simply the cost of doing business. *See Willman*, 695 S.W.2d at 753; *Martinez–Velasco*, 666 S.W.2d at 616.

### IV. Conclusion

Although the bail amount is considerably high in this case, appellant has failed to demonstrate that the bail fixed by the trial court is excessive. When we consider the evidence relevant to the factors set out in article 17.15 and in *Rubac*, we hold the trial court did not abuse its discretion in setting bail in the amount of $2,500,000.00 and refusing to further reduce it. We overrule appellant's sole point of error and affirm the trial court's judgment.