Motion for Rehearing Granted; Opinion of June 1, 2004, Withdrawn









 

Motion for Rehearing Granted; Opinion of June 1, 2004,
Withdrawn.  Reversed and Rendered and
Majority and Dissenting Opinions on Motion for Rehearing filed August 24,
2004.

 

 

In The

 

Fourteenth Court of
Appeals

 

____________

 

NOS. 14-03-01421-CR

           14-03-01423-CR 

          14-04-00194-CR

____________

 

EX PARTE
ROBERT DURST

 

 



 

On Appeal from the
212th District Court

Galveston
County, Texas

Trial Court Cause
Nos. 01CR1900,
01CR2007, & 04CR0323

 



 

                                     M A J O R I
T Y   O P I N I O N

                         O N   M O T I O N  
F O R   R E H E A R I N G

 

I.          INTRODUCTION








This is a highly unusual bond appeal from orders denying
Durst=s applications for writs of habeas
corpus.  It involves the highest bail
ever set in Texas for a single offenseC$1 billionCas well as the highest amount for
three offensesC$3 billion.  It involves a defendant, Robert Durst, of
apparently great, but undetermined, wealth. 
It also involves a condition imposed by the trial court requiring Durst,
who fled an earlier court date on another charge, to pay for twenty-four-hour
supervision by law enforcement. 

In addition to that, this is not our first opinion in this
case.  Originally this Court remanded the
case to the trial court because the bail set was grossly and outrageously
excessiveCunconstitutionally excessive.  However, the majority of the panel did not
set an amount for bail or state what a reasonable bail might be, other than to
state that we had not found a decision in which bail had been set or approved
at even one percent of the three amounts set in this case.  

As one can imagine, this case defies comparison with any
precedent.  That is why Durst filed a
motion for rehearing.  Fearing that the
trial court had no real guidance from this Court or the case law, Durst
requested this Court issue a new opinion re-setting bail for each offense.  Today, we do just that.  A majority of the panel grants rehearing,
orders the earlier opinion withdrawn, and sets bail for each offense at
$150,000.  Although this amount is a bit higher than the high end
of the range of bail set for third-degree felonies, we find the amount
justifiable under the very unusual circumstances of this very unusual
case.  We explain below.  

II.       IN
SETTING BAIL, ARTICLE 17.15 OF THE CODE OF CRIMINAL PROCEDURE DIRECTS US TO
CONSIDER CERTAIN FACTORS   

In three issues, Durst challenges the bail
amounts as violating the constitutional and statutory prohibitions against
excessive bail.[1]  See U.S.
Const. amend. VIII; Tex. Const.
art. I, ' 13; Tex. Code Crim. Proc. art. 1.09.








The right to release before trial is
conditioned upon the accused=s giving adequate
assurance that he will stand for trial and submit to sentence if
convicted.  Stack v. Boyle, 342
U.S. 1, 4 (1951).  Bail set at an amount
higher than reasonably calculated to fulfill this purpose is excessive under
the Eighth Amendment.  Id. 

The burden is on the person seeking the
reduction to demonstrate that bail is excessive.  See Maldonado v. State, 999 S.W.2d 91,
93 (Tex. App.CHouston [14th. Dist.] 1999, pet. ref=d).  The amount of bail is a matter resting within
the sound discretion of the trial court and there is no precise standard for
reviewing its determination.  Ex parte
Pemberton, 577 S.W.2d 266, 267 (Tex. Crim. App. 1979).  However, article 17.15 of the Code of
Criminal Procedure serves as a guide.

Article 17.15 provides that bail shall be set, in the
exercise of discretion, and according to the following rules:

1.       The bail shall be sufficiently high to
give reasonable assurance that the undertaking will be complied with.

2.       The power to require bail is not to be so
used as to make it an instrument of oppression.

3.       The nature of the offense and the
circumstances under which it was committed are to be considered.

4.       The ability to make bail is to be
regarded, and proof may be taken upon this point.

5.       The
future safety of a victim of the alleged offense and the community shall be
considered.

Tex. Code Crim. Proc. art. 17.15.

Other circumstances and factors to be
considered in determining the amount of bail include family and community ties,
length of residency, aggravating factors involved in the offense, the defendant=s work history,
prior criminal record, and previous and outstanding bail.  Ex parte Rubac, 611 S.W.2d 848, 849 (Tex.
Crim. App. 1981).  We will review each of
the factors separately.

A.      Sufficient
Bail to Assure Appearance








We turn to the first factor, a sufficient
bail to assure appearance.  The evidence
indicates that a bail of approximately $300,000 was not enough to keep Durst in
Texas for his trial for murder.[2]  Durst=s home is New York
City.  Although Durst previously resided
in Galveston for a time, he admits he has no real ties to Galveston
County.  Because Durst is independently
wealthy, he is able to travel easily.  He
also is willing to disguise himself to evade authorities, having done so in the
past.  This history of jumping bail and
fleeing the jurisdiction certainly supports a finding that he is an extreme
flight risk.  Indicating her concern
about this at the hearing on bond, the trial court discussed taped
conversations of Durst that she heard before his murder trial.  In those conversations, he talked about
having money secreted in a non-extradition country.  These factors support an extremely high bail.

B.      Not
to be Used as an Instrument of Oppression

The second factor requires courts to
ensure that bail is not used as an instrument of oppression.  This factor is one of the reasons we reversed
the original bail.  These amounts were so
excessive, no one could meet themCnot Durst, and not
any of the bail bond companies.  The bail
seemed designed solely to prevent Durst from getting out of jail.  This is an example of bail being used as an
instrument of oppression.  See Tex. Code Crim. Proc. art. 17.15(2).

Even though we are lowering the amount of
bail, this record still supports a high bail. 
A bail set around one million dollars for all three offenses together
would not be oppressive.  Although the
record is a little unclear as to the highest bail Durst could make, it appears
that Durst could make a total bail of one million dollars.  For his trial, he was able to post bail
equaling approximately $300,000, apparently procuring the money in a day, and
he was willing to forfeit that amount. 
His willingness to forfeit indicates access to more money.

C.      Nature
of the Offense








The third factor under article 17.15 is the nature of the
offense for which the defendant is charged. 
In connection with this, two of the primary factors considered are (1)
the length of the sentence, and (2) the nature of the offense.  Ex parte Rubac, 611 S.W.2d at 849; Hughes
v. State, 843 S.W.2d 236 (Tex. App.CHouston [14th Dist.] 1992, no
pet.).  Durst is charged with two counts of
felony bail jumping and failure to appear under section 38.10 of the Texas
Penal Code and one count of tampering with evidence under section 37.09(d)(1)
of the Code.  Each offense is a
third-degree felony punishable by imprisonment from two to ten years and a fine
up to $10,000.  Tex. Pen. Code ' 12.34.

Although the nature of the offenses and
the potential lengths of their sentences are relatively minor in comparison to
first- and second-degree felonies, they are, nonetheless, felonies.  Two of the felonies are for fleeing in the
face of an indictment charging murder and the third is for tampering with
evidenceCwhich in this case
is a human body.  These are serious
offenses.

The bail amounts set for third-degree
felonies range from $25,000 to $100,000. 
See, e.g., Ex parte Lopes, No. 05‑04‑00216‑CR,
2004 WL 878295, at *1 (Tex. App.CDallas April 26,
2004, no pet.) (not designated for publication) (bail of $100,000 for
stalking); Ex parte Cosby, Nos. 07‑02‑0482‑CR & 07‑02‑0483‑CR,
2003 WL 21994760, at *1 (Tex. App.CAmarillo Aug. 21,
2003, no pet.) (not designated for publication) (bail of $100,000 for seventeen
counts of possession of child pornography); Ex parte Hulin, 31 S.W.3d
754, 755 (Tex. App.CHouston [1st Dist.] 2000, no pet.) (bail
of $50,000 for criminal solicitation of a minor); Ex parte McCullough,
993 S.W.2d 836, 836B37 (Tex. App.CWaco 1999, no
pet.) (bail of $25,000 for three counts of injury to an elderly person); Applewhite
v. State, 872 S.W.2d 32, 33 (Tex. App.CHouston [1st
Dist.] 1994, no pet.) (bail of $80,000 for theft).  Considering this factor alone, a bail within
this range would not be unreasonable.

D.      Ability
to Make Bail








The fourth factor article 17.15 lists is
the ability to make bail.  Although
again, the record is a little unclear as to the full extent of Durst=s wealth, we know
it might be immense but we also do not know precisely how much of his wealth he
can access.  We do know, as we mentioned
earlier, that he rapidly procured approximately $300,000 for his trial.

In addition, Durst=s civil lawyer
testified that Durst has liquid assets of $2B4 million.  Although he has other assets in trust, the
corpus cannot be reached.  The evidence
was conflicting regarding whether Durst has any property or real estate.  Tax records showed Durst received income of
approximately $400,000 last year from an annuity.  However, the annuity cannot be executed
upon.  The lawyer testified that Durst
could afford a bail of $50,000, but did not say the maximum amount of bail he
could afford.  The lawyers and the court
discussed other evidence, introduced at the bond hearing, potentially showing
that Durst may have great sums of money secreted in a non-extradition
country.  

In short, as we previously stated,
although conflicting evidence exists, it appears Durst could make bail at least
as high as one million dollars.

E.      Future
Safety of the Victim and the Community

The fifth factor is the future safety of
the victim and the community.  Although
one of the felonies is based on Durst=s attempt to
dispose of the body of a man Durst admitted killing in self-defense, Durst is
not charged with a violent crime.  The
offenses involved here are, in essence, victimless crimes.  In addition, Durst has never been convicted
of a violent crime. 








The State alleges, however, that Durst is
a threat to the community at large.  At the
trial court hearing, the State and the trial judge referred to taped
conversations of Durst in which he allegedly threatened to hurt other people,
and Durst=s own lawyers acknowledged that Durst=s brother is
afraid of him.  Based on this, the State
argued that Durst is a danger to the community. 
The State did not produce these tapes on appeal, so we have not listened
to them.  But the trial judge did listen
to them and based her decision in large part on these tapes and other events
also not in the record.  

These taped conversations and other events
obviously concerned the trial judge and made her fear for others= safety.  We cannot assume that her fears were
unfounded, nor does the record discredit her fears.  For these reasons, this factor supports a
higher, rather than a lower bail.

F.       The
Remaining Factors

The remaining factors, an established work
record, family ties to Galveston, length of residence, and past record of
appearing for trial, also hurt Durst=s chances for a
lower, rather than higher bail.  Durst
has no work record.  He has no family
ties to Galveston.  He has not lived in
Galveston long.  And, he fled the last
time he had a trial setting, although the charge he faced then was murder, not
third-degree felonies.  His lawyers
argued he is less likely to flee these charges than his murder charge.  However, even if we accept the argument as valid,
these factors overall point to a high bailCwell over what
Durst paid the first time.

G.      Calculating
the Damage Done by the Article 17.15 Factors

As a whole, the article 17.15 factors do
not support a low bail, not even a bail of $50,000 as Durst has requested.








Only the third factor, the nature of the
offense, supports a lower bail. 
Generally, the case law states that this is the primary factor to be
considered.  See, e.g., Ex
parte Rubac, 611 S.W.2d 848 at 849 (AThe primary
factors are the length of the sentence and the nature of the offense.@); Avilas v.
State, 26 S.W.3d 696, 698B99 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d) (A[T]wo factors
should be given great weight when determining the amount of bail: the nature of
the offense and the length of the sentence.@); Hulin,
31 S.W.3d at 759 (AThe primary factors to be considered in
determining what constitutes reasonable bail are the punishment that can be
imposed and the nature of the offense.@).  In most cases, it probably is the controlling
factor.  But in a case such as thisCin which the
defendant presents a triple risk of wealth, prior flight, and a danger to the
communityCit cannot be the controlling factor.  It is still important, but not
controlling.  Also, none of the
third-degree felony cases within the range had all three additional factors we
have here.  See Lopes, 2004
WL 878295; Cosby, 2003 WL 21994760; Hulin, 31 S.W.3d 754; McCullough,
993 S.W.2d 836; Applewhite, 872 S.W.2d 32.  Looking only at the article 17.15 factors,
then, our research supports bail well over the $300,000 set last time.  But, our inquiry cannot stop there, because
the court did take some action that would decrease the large bail the factors
support; it imposed conditions.  Before
we decide upon a specific bail amount, we must consider those conditions. 

III.      CONDITIONS
THE COURT IMPOSED 

As noted above, at Durst=s urging, the
trial court set conditions intended to secure Durst=s appearance and
to ensure that he does not leave Galveston or Harris Counties.  These are some of the conditions the judge
set:

$                  
Durst
must submit to twenty-four-hour supervision by a licensed peace officer of the
State of Texas and he must pay the costs of supervision;

$                  
Durst
may not leave Galveston or Harris Counties without prior written approval of
the trial court;

$                  
Durst
must surrender his passport and not obtain any others; 

$                  
Durst
must be home by 7:00 p.m. unless the court approves another time in advance;
and,

$                  
Durst
must appear in court every Friday morning at 9:00 a.m.[3]

Clearly, these conditions greatly restrict
Durst=s ability to
flee.  The question before us is how much
they should impact bail.  Little guides
us.








In discussing bail, article 17.15 does not
mention conditions.  However, some cases
have considered conditions as a means of assuring a defendant=s appearance or of
protecting the victim and society.  See
Nguyen v. State, 881 S.W.2d 141, 144 (Tex. App.CHouston [1st
Dist.] 1994, no pet.) (considering the appellant=s agreement to
electronic monitoring as a condition of bail); see also Ex parte
Wilson, No. 01‑00‑00140‑CR, 2000 WL 964570, at *2 (Tex.
App.CHouston [1st
Dist.] July 12, 2000, orig. proceeding) (not designated for publication) (AFactors that favor
a reduction in bail are . . . his willingness to be electronically monitored .
. . .@).

These conditions alone are calculated to
ensure that Durst appears for trial. 
Moreover, public safety is reinforced with the twenty-four-hour
supervision by licensed peace officers. 
To thwart this supervision, Durst would have to conspire with others and
take the high risk of injury or death. 
On the whole, these conditions greatly swing the balance close to the
range of bail for third-degree felonies. 
As a result, we hold an appropriate balance of the conditions with the
article 17.15 factors supports bail of $150,000 for each offense, making the
total bail $450,000.

IV.      CONCLUSION

In conclusion, we reverse the trial court=s orders denying
Durst=s applications for
writs of habeas corpus and set bail at $150,000 in each cause number.  Because Durst=s applications for
writs of habeas corpus did not challenge the conditions the trial judge
imposed, those portions of the trial court=s orders remain in
effect. 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment rendered and Majority and
Dissenting Opinions on Motion for Rehearing filed August 24, 2004.

 

Panel
consists of Justices Fowler, Edelman, and Seymore.  (Edelman, J., dissenting.)

Publish
C Tex. R. App. P. 47.2(b).











[1]  Durst also raises
a fourth issue, contending that there should be only one indictment charging
bail jumping rather than two.  However,
we do not reach that issue because Durst did not sufficiently develop it in the
trial courtCpresenting no evidence and little argument.  It presents nothing for our review and is
overruled.





[2]  A jury later
acquitted Durst of murder.





[3]  Durst does not appeal any of the
conditions imposed.