Opinion issued June 29, 2006










In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00035-CR
____________

THANH DUC TRAN

V.

THE STATE OF TEXAS
 

 
 
On Appeal from the 228th Judicial District Court
Harris County, Texas 
Trial Court Cause No. 1050130
 

 
 
MEMORANDUM OPINION
          This is an appeal from the trial court’s order denying an application for writ of
habeas corpus in connection with a bond reduction hearing. The State charges
appellant, Thanh Duc Tran, with possession of cocaine with intent to deliver and
possession of marijuana. The trial court initially set bail at $4 million and $2.4
million for each charge, respectively. After hearing Tran’s application, the trial court
reduced the bail to $800,000 for the cocaine charge and $500,000 for the marijuana
charge. We affirm.
Facts
Rick Mendez, a representative of Access Bail Bonding, interviewed Tran to
determine his ability to make bond. He testified to the following: Tran has lived in
Houston since 1993, and currently resides with his sister. He also has a brother living
in Houston. Tran is a self-employed tile worker, earning approximately $600 per
week. He has a social security number and a passport. When Mendez asked Tran
whether he has a bank account, Tran responded that he had access to about $2,000. 
Tran has no real estate and owns a 1991 Lexus worth about $1,000. Tran has one
prior misdemeanor conviction for DWI from January 2005, has no bond forfeitures,
and abided by the conditions of a previous bond. Mendez concluded his company
would post a $5,000 bond on Tran’s behalf. On cross-examination, Mendez conceded
that Tran did not tell him a green Acura, alleged to have been involved in the delivery
of cocaine, was registered in Tran’s name, nor that he was the registered owner of a
Honda minivan, in which police officers observed Tran leaving the location where
the officers later discovered a substantial amount of cocaine and marijuana.
The State proffered that on November 2, 2005, police officers received
information about narcotics activity at 2828 Hayes Road, apartment 418, leading
them to establish surveillance there. The officers observed Tran leave the apartment
in a van, go to another location, and return in a green Acura. He later left the location
in the van. Officers observed Tran at the apartment, and saw him open its garage
door with an opener to allow a Honda pickup truck to exit the apartment’s garage. 
When police subsequently stopped the truck for a traffic violation, they found
approximately 110 pounds of marijuana in the truck’s bed. Officers obtained a search
warrant for the apartment. While waiting for the search warrant, officers saw two
other suspects arrive at the apartment in a silver Neon. The officers found six
kilograms of cocaine in their possession. When officers executed the warrant to
search the apartment, they recovered approximately 600 pounds of marijuana, 20
kilograms of cocaine, and 400 grams of ecstasy tablets. Tran admitted to the officers
that he and another friend watched the apartment. Police found approximately $1,300
in cash on Tran. 
The trial court concluded that the apartment was a “stash house.” The trial
court stated Tran’s bonds would remain high because the the drugs were valuable and
the range of punishment, confinement for a range of 15 years to life, made Tran a
flight risk. The trial court reduced the bond on the cocaine charge from $4 million
to $800,000 and on the marijuana charge from $2.4 million to $500,000.
Standard of Review
          The standard for reviewing bail settings is whether the trial court abused its
discretion. See Ex parte Rubac, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981). In the
exercise of its discretion, a trial court should consider the following factors in setting
a defendant's bail:
1. The bail shall be sufficiently high to give reasonable assurance that
the undertaking will be complied with.
 
2. The power to require bail is not to be used as an instrument of
oppression.
 
3. The nature of the offense and the circumstances of its commission are
to be considered.
 
4. The ability to make bail is to be regarded, and proof may be taken on
this point.
 
5. The future safety of a victim of the alleged offense and the
community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon Supp. 2005); see Ludwig v. State,
812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (noting that the court is "to be governed
in the exercise of [its] discretion by the Constitution and by the [article 17.15
factors]"). The burden of proof is upon a defendant who claims bail is excessive. 
Rubac, 611 S.W.2d at 849; Ex parte Martinez-Velasco, 666 S.W.2d 613, 614 (Tex.
App.—Houston [1st Dist.] 1984, no pet.). 
The primary purpose for setting bond is to secure the presence of the defendant
in court at his trial. Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977);
Ex parte Bonilla, 742 S.W.2d 743, 744 (Tex. App.—Houston [1st Dist.] 1987, no
pet.). The amount of bail should be set sufficiently high to give reasonable assurance
that the accused will comply with the undertaking, but should not be set so high as
to be an instrument of oppression. Ex parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim.
App. 1977); Ex parte Willman, 695 S.W.2d 752, 753 (Tex. App.—Houston [1st Dist.]
1985, no pet.). Courts should also consider the defendant's work record, family ties,
residency, criminal record, and conformity with previous bond conditions. See
Rubac, 611 S.W.2d at 849.
Discussion
A. Nature of the Offense
          Police established surveillance for narcotics activity at the Hayes Road
apartment. During their observation, officers saw Tran leave the location in a van,
go to a second location, and return to the apartment, driving a green Acura. Police
also saw Tran open the apartment’s garage with an automatic opener to allow a
Honda pickup truck to exit it. Officers then pulled over the truck that had left the
garage. They searched the truck and discovered 110 pounds of marijuana. While
waiting to execute a search warrant for the Hayes apartment, officers apprehended
two additional suspects arriving at the apartment in possession of six kilograms of
cocaine. When police searched the apartment, they found approximately 20
kilograms of cocaine, 600 pounds of marijuana, and 400 grams of Ecstasy tablets. 
Tran admitted that he and a friend kept watch over the apartment. Police found
$1,300 cash on Tran at the time of his arrest. 
          The cocaine charge is a first degree felony offense, carrying a range of
punishment of 15 to 99 years or life imprisonment and a fine not to exceed $250,000. 
See Tex. Health & Safety Code Ann. § 481.112(a), (f) (Vernon 2003); id.
481.102(3)(D) (Vernon Supp. 2005). The marijuana charge is a second degree felony
offense, carrying a range of punishment of not more than 20 years or less than two
years and a fine not to exceed $10,000. Id. § 481.121(b)(5) (Vernon 2003); Tex. Pen.
Code Ann. § 12.33(a), (b) (Vernon 2003).
          The State proffered evidence supporting the theory that Tran participated in the
transportation and sale of large quantities of illegal drugs. According to the State’s
proffered evidence, Tran’s participation in this alleged drug smuggling operation
involved at least two other drug couriers and three vehicles that he did not discuss
with his bail bondsman who testified: (1) the minivan, (2) the green Acura, and (3)
the Honda pickup. In addition, Tran allegedly admitted that he and a friend “watched
over” the Hayes apartment where police found large quantities of cocaine, marijuana
and ecstasy. 
          The nature of the alleged offenses is serious, carrying substantial penalties. We
conclude that the State’s proffer supports the trial court’s inference that the Hayes
apartment was a “stash house” of the type used by an organized drug smuggling
operation, distributing a large quantity of drugs. In cases involving similarly large
quantities of drugs, our court has held that the trial court does not abuse its discretion
in setting a high bond. See, e.g., Ex parte Ruiz, 129 S.W.3d 751, 754 (Tex.
App.—Houston [1st Dist.] 2004, no pet.) (holding that drug operation with house
containing 55 kilos of cocaine at its nexus in part justified $600,000 bond); Ex parte
Willman, 695 S.W.2d at 753 (upholding $300,000 bond where police recovered 2
kilos of cocaine and defendant was charged with first degree felony); see also Brown
v. State, 11 S.W.3d 501, 503 (Tex. App.–Houston [14th Dist.] 2000, no pet.)
(upholding $500,000 bond where police recovered 4.5 kilos of cocaine, despite
defendant’s strong family and community ties and his apparent inability to post bond,
due in part to the serious nature of the offense); Maldonado v. State, 999 S.W.2d 91, 
95-96 (Tex. App.– Hous. [14th Dist.] 1999, pet. ref’d) (upholding $2.5 million bond
where police recovered 721 kilos of cocaine). 
B. Sufficient Bail to Assure Appearance But Not Oppress
Tran contends that the State offered no evidence to justify the high bonds for
these charges. The State responds that illegal drug smuggling operations of the kind
alleged often require large amounts of cash and the involvement of monied backers
willing to forfeit bonds that are not sufficiently high. See Willman, 695 S.W.2d at
753; Maldonado, 999 S.W.2d at 94 (Harris County bail bondsman admitted
familiarity with recent bond forfeitures in large narcotic bond cases, including a
$300,000 bond forfeiture in a drug case). This court has upheld trial court orders
setting bonds in ratios related to the quantity recovered within the range of the trial
court’s order in this case. See Ruiz, 129 S.W.3d at 755 (upholding order setting the
bail at $600,000 in a case in which police seized 63.55 kilos of cocaine); Willman,
695 S.W.2d at 753–54 (setting bail at $300,000 in a cocaine delivery case involving
two kilos of cocaine). 
Here, Tran contends that we should not consider the street value of the drugs 
because the State offered no evidence to support such a conclusion. In setting the 
bonds, the trial court stated, “Sounds like a pretty extensive operation. And there is
about $3 million worth of drugs involved.” While the record reflects some evidence
to support the former conclusion, the State offered no evidence to support the trial
court’s valuation of the drugs. We agree with Tran that we cannot consider the trial
court’s statement regarding the specific street or market value of the drugs to support
the bonds in this case without evidence to support such a conclusion in the record. 
Nonetheless, given the large quantity of cocaine, ecstasy, and marijuana recovered,
the trial court reasonably could have concluded that the market value of the drugs was
significant—even if specifically undetermined—and a substantial source of income
to those alleged to have possessed them with an intent to distribute them. One need
not know the precise market value of a fleet of Mercedes at a car dealership to
understand that those vehicles represent a significant source of income to the dealer;
similarly, although no one offered evidence of the precise market value of the illegal
drugs involved, the State provided the quantities recovered, which even at their
lowest value would represent a significant source of income to those alleged to
possess them with an intent to distribute. 
Tran introduced evidence from a bail bondsman that the largest bond Tran
could make was $5,000. Given the evidence that associated Tran with the house
where drugs were recovered, the three vehicles involved in the offenses, the large
quantity of the drugs, and the $1,300 found on Tran’s person, the trial court
reasonably could have found that Tran’s resources, as testified to by the bail
bondsman, were not the only ones available to Tran, and therefore, he did not carry
his burden to establish that he is unable to make bail. 
Tran notes that he complied with an earlier bond to secure his appearance in
connection with a misdemeanor DWI charge, that he has lived in Houston for 13
years, has a sister and a brother who live in Houston, and that it is his first drug
charge. These factors would indicate that the court could assure his attendance at trial
with a lower bond. However, ties to the community and compliance with bonds
associated with earlier criminal appearances, although factors that a trial court may
take into account, may not outweigh the quantity of the drugs recovered, the mobility
available to participants in the illegal transport and sale of drugs, and the resources
that such activities provide to a defendant seeking to forfeit a bond. Brown, 11
S.W.3d at 503–04. In addition, the charges involved are serious offenses, with ranges
of punishment from 15 years to life imprisonment in one charge and two to 20 years
imprisonment in the other charge. Based on these factors, the trial court concluded
Tran is a flight risk.
C. Other Factors
          The parties offered no evidence as to the fifth factor specified in article 17.15,
the future safety of a victim of the alleged offense and the community. A trial court
should not ignore, however, the negative impact that the possession and distribution
of cocaine and marijuana has on the safety of the community. Maldonado, 999
S.W.2d at 97. 
In setting bail, however, the trial court considered these factors against the State’s
allegations involving a drug smuggling operation, the quantity of drugs recovered,
and the lengthy terms of potential imprisonment.
Conclusion
Given the totality of the circumstances, we hold that the trial judge did not
abuse his discretion in setting bail. We therefore affirm the order of the trial court.
 
 
                                                   Jane Bland
                                                   Justice
 
 
Panel consists of Justices Keyes, Alcala, and Bland.

Do not publish. Tex. R. App. P. 47.2(b).