02-12-242-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00242-CR

 

 









 
 
 Ex
 parte Brent Benefield
  
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 30th District Court
  
 of
 Wichita County (176,894-A)
  
 January
 17, 2013
  
 Opinion
 by Justice Gardner
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s order.  It is ordered that the order of the trial
court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS








 

 

 

 

By_________________________________

   
Justice Anne Gardner

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00242-CR

 

 


 
 
 Ex parte Brent Benefield
 
 
  
 
 
  
 
 
 
 
  
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 30th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

 

Appellant
Brent Benefield appeals the trial court’s order setting the amount of his bail
at $200,000.  See Tex. Code Crim. Proc. Ann. art. 11.24 (West 2005).  Benefield
asserts in one issue that the trial court abused its discretion by setting bail
at an amount he cannot make and by failing to properly consider the nature and
circumstances of the offense.  We affirm.

II.  Background

 

Benefield
was arrested in April 2012 for the felony offense of injury to a child causing
serious bodily injury or death.  See Tex. Penal Code Ann. § 22.04(e)
(West Supp. 2012).  Bail was initially set at $1 million.  Benefield filed an
application for writ of habeas corpus, asserting that bail was excessive and
asking that the trial court reduce the bond to a reasonable amount or grant him
release on a personal recognizance bond.  The trial court conducted a hearing
on Benefield’s application for writ of habeas corpus on May 18, 2012.  After
the hearing, the trial court advised the parties that it had, based on the
evidence presented during the hearing, decided to reduce Benefield’s bail from
$1 million to $200,000.  The trial court subsequently signed an order to that
effect.

The
State’s only evidence, which the trial court admitted without objection, was
the arrest affidavit.  In the affidavit, Detective Todd Henderson averred that
he was the primary investigator in the case.  On February 8, 2012, emergency
personnel responded to a 911 call from Benefield who stated that his
four-month-old son was not breathing and was coughing up blood.  Detective
Henderson spoke with Benefield at the hospital, and Benefield said that he was
the child’s primary caregiver during the day and that his wife had left for
work around 7:30 that morning.[2]  Benefield reported that
the child had acted normally until about noon but that his son became
unresponsive and began coughing up blood when he moved the child from a swing
in order to change the child’s diaper.  Benefield told officers that he was the
only person in contact with the child between 7:30 a.m. and the time he called
911.

Detective
Henderson also stated in the affidavit that medical personnel had determined
that the child had “numerous injuries to his body including a brain injury that
resulted in a subdural hematoma inside his skull as a result of blunt force
trauma.”  The child further had “retinal hemorrhages in both eyes, along with
swelling of the brain.”  The child died four days later.  The cause of death
listed in the autopsy report was a “[c]losed head injury due to blunt impact to
the head and brain,” and the manner of death was listed as homicide.

Benefield
called three witnesses during the hearing:  his mother, his former
mother-in-law, and himself.  Benefield testified that he was thirty years old
and had lived in Wichita Falls for sixteen or seventeen years.  He had been
employed off and on throughout the community, and his most recent employment
was as a warehouse associate for Harbor Freight Tools.

Benefield
is married and has two other children, ages three and six.  He testified that
he has no criminal history other than arrests for failure to pay traffic
tickets.  He testified that he was aware of the investigation concerning this
case and that it lasted several months before his arrest.  Benefield testified
that he received a phone call from the detective who said that officers were on
their way to arrest him.  Benefield waited for the officers to arrive and
allowed them to peacefully arrest him.  He testified that he had “ample
opportunity” to run but did not do so.

Benefield
also testified that he did not plan to run away if he were released and that
although he is no longer employed, he planned to find employment upon release
from custody.  Concerning assurances that he could give the trial court,
Benefield testified, “I don’t really know what I can give other than I’m not
leaving any -- any time because I have a six year old and a three year old that
I can’t leave.”

Benefield
testified that he does not have money in a bank account, that he does not own a
vehicle or home, that he could not personally post any amount of bail, that he
would rely on family and friends to help him make bail if the amount was
reduced by the trial court, and that his family and friends had indicated a willingness
to help him.

Angela
Waldrop is Benefield’s former mother-in-law.  She testified that she had seen
Benefield interact with his daughter many times over the years.  Waldrop described
Benefield as “[e]xtremely loving,” and that she had “never seen any temper,”
and that “he treat[ed his daughter] like the little princess she is.”  Waldrop
testified that she did not believe Benefield to be a threat to the community
and that he has a good support structure in the community to help him.

Terri
Daugherty, Benefield’s mother, testified that Benefield had always been
“excellent” with his children, had been a “very good dad,” and had a “really
low-key” personality.  Daugherty testified that she and her husband lived in
Wichita Falls and that she had never seen anything out of the ordinary with
Benefield’s interaction with his children.  Daugherty testified that she had
provided support to Benefield and his wife when needed and that Benefield did
not have the means to post $1 million in bail.  She testified that Benefield
would have to rely on friends and family to post any kind of bail.  Daugherty
also testified that Benefield had never before been in any kind of trouble and
that she would help assure that he would abide by the court’s orders concerning
release on bail, including any prohibition that he not be around his children.

At
the conclusion of testimony, Benefield offered an exhibit containing a recorded
conversation between two of his attorneys and Dr. Lloyd White, the pathologist
who performed the autopsy in this case.  The State did not object to the
exhibit, and the trial court admitted it for purposes of the hearing.

The
recording reflects that Dr. White was reviewing a portion of the child’s
medical records while answering questions posed by Benefield’s attorneys.  Dr.
White had noted during the autopsy that the child had suffered numerous
injuries throughout his life.  Dr. White opined that the child had sustained a
spiral fracture in December 2011, and that fractures to the child’s “long
bones” were more recent.  The child also had rib fractures that could have occurred
in December.

Concerning
the child’s subdural hematoma, Dr. White stated that there is not a way of
“dating it” but that it had probably occurred within twenty-four hours of the
x-ray.  Dr. White also noted other, smaller subdural hematomas that appeared
five to seven days older.  Near the end of the recorded conversation, Dr. White
stated that he did not know “whether [the State would] be able to come up with
legal proceedings because . . . [w]ith criminal, you know, proceedings, you
have to get into a beyond reasonable doubt realm” and that “this is a -- you
know, kind of out in the gray zone.”

After
Benefield filed notice of this appeal, he filed a motion to reconsider in the
trial court.  In that motion, Benefield argued that newly discovered evidence,
including information within police investigation records stating that
Benefield’s wife suffers from post-partum depression and had stopped taking her
medication before the child had been fatally injured, raised doubt as to
whether probable cause supported Benefield’s continued detention.  The
appellate record includes the motion to reconsider but does not include an
order granting or denying Benefield’s motion to reconsider.

While
this appeal was pending, a grand jury indicted Benefield for serious bodily
injury to a child.[3]

III.  Discussion

 

We
review the trial court’s ruling on the setting of bail for an abuse of
discretion.  See Ex parte Rubac, 611 S.W.2d 848, 850 (Tex. Crim. App.
[Panel Op.] 1981); Ex parte Scott, 122 S.W.3d 866, 868 (Tex. App.—Fort
Worth 2003, no pet.); see also Tex. Code Crim. Proc. Ann. art. 17.15
(West 2005).  To determine whether the trial court abused its discretion, we
must decide whether the trial court acted without reference to any guiding
rules or principles, i.e., whether the trial court’s action was arbitrary or
unreasonable.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990).  Merely because a trial court may decide a matter within its discretion
in a different manner than an appellate court would in similar circumstances
does not demonstrate that an abuse of discretion has occurred.  Id.

The
primary purpose of a bail bond is to secure the defendant’s presence at trial
on the offense charged.  Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim.
App. 1977); Scott, 122 S.W.3d at 868.  Accordingly, bail should be set
high enough to give reasonable assurance that the defendant will appear at
trial, but it should not operate as an instrument of oppression.  Scott,
122 S.W.3d at 868.  The pretrial bail amount must be set sufficiently high to
secure the accused’s presence at trial because he might fail to appear when
facing the prospect of a lengthy sentence.  See id. at 869.  A defendant’s
inability to meet the bail set by the trial court does not automatically render
the amount excessive.  Id. at 870.

Code
of criminal procedure article 17.15 sets forth the following criteria for
establishing the amount of bail to be required:

1.  The bail shall be
sufficiently high to give reasonable assurance that the undertaking will be
complied with.

 

2.  The power to
require bail is not to be so used as to make it an instrument of oppression.

 

3.  The nature of the
offense and the circumstances under which it was committed are to be
considered.

 

4.  The ability to
make bail is to be regarded, and proof may be taken upon this point.

 

5.  The future safety of a victim of the alleged offense
and the community shall be considered.

Tex.
Code Crim. Proc. Ann. art. 17.15.

In
addition to these factors, the court should also weigh the following in
determining the amount of bail:  the accused’s work record; the accused’s
family and community ties; the accused’s length of residence in the county; the
accused’s prior criminal record, if any; the accused’s conformity with the
conditions of any previous bond; the existence of outstanding bonds, if any;
and aggravating circumstances alleged to have been involved in the charged
offense.  Rubac, 611 S.W.2d at 849–50; Scott, 122 S.W.3d at 869; see
Ex parte King, No. 10-09-00164-CR, 2009 WL 2767725, at *1 (Tex. App.—Waco
Aug.19, 2009, no pet.) (mem. op., not designated for publication).  The
defendant bears the burden of showing that he is entitled to a reduction in
bail.  Rubac, 611 S.W.2d at 849; Maldonado v. State, 999 S.W.2d
91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).

Benefield
argues that his voluntary cooperation with authorities during the
investigation, including that he was the person who initially called 911, and
his local ties to Wichita Falls demonstrate that he needs little financial
incentive to ensure his appearance at trial.  He further asserts that a lower
bail amount is necessary because he established that he cannot make bail at any
amount and must rely on friends and family.  Benefield also points to the
evidence that he has no criminal history and poses no risk to his other
children.  Concerning the circumstances of the case, Benefield contends that
the trial court failed to adequately consider the strength of the State’s case
against him, and he points to the police records reflecting his wife’s
depression and to Dr. White’s opinions that some of the child’s injuries were
caused over a period of months.  In conclusion, Benefield asserts that because
the circumstances of the crime do not definitively point to his guilt and
because he cannot make bail in the amount of $200,000, bail in the amount of
$200,000 is excessive.

The
State responds that nothing in the record suggests that the trial court set
bail at $200,000 in an effort to prevent his release, particularly given the
trial court’s reduction of bail by $800,000.  The State further argues that,
despite Benefield’s assertions that he cannot afford bail in any amount,
Benefield has not shown that he could not rely on others to help him post bail
at $200,000.  The State also points out that the crime for which Benefield has
been charged carries a punishment range of five to ninety-nine years or life[4]
and that Benefield is charged with causing his child’s death through
blunt-force trauma to the head.  Citing this court’s opinion in Ex parte
Bennett, the State asserts that bail in the amount of $200,000 is
reasonable for this case.  See No. 02-07-00175-CR, 2007 WL 3037908, at
*2, 4 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated
for publication) (affirming $200,000 bond for defendant charged with aggravated
sexual assault of a child).

With
the above-stated principles and the parties’ arguments in mind, we consider
whether the trial court abused its discretion by setting Benefield’s bail at
$200,000.  Benefield is charged with a first-degree felony and faces the
possibility of up to ninety-nine years or life incarceration.  See Tex.
Penal Code Ann. §§ 12.32(a), 22.04(e).  Also, the record contains no evidence
indicating that the trial court rendered its decision for the purpose of
forcing Benefield to remain incarcerated pending trial.  Cf. Ex parte Harris,
733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (noting that the trial
judge had stated that it would “rather see him in jail than to see someone’s
life taken”).  On the other hand, Benefield presented evidence that he has
strong ties to the community, that he has no prior criminal record, and that he
voluntarily spoke with police during the investigation.  Benefield also
presented evidence that he cannot make bail in any amount.  Although a
defendant’s ability to make bail is a factor for consideration, the inability
to make bail—even to the point of indigence—does not control over the other
factors.  Ex parte Charlesworth, 600 S.W.2d 316, 317 (Tex. Crim. App.
[Panel Op.] 1980); Ex parte Davis, 147 S.W.3d 546, 548 (Tex. App.—Waco
2004, no pet.).

Benefield
unquestionably presented evidence favorable to his application for writ of
habeas corpus, but given the serious nature of the crime for which he is
accused, the possibility of a substantial term of incarceration, the absence of
any indication that the trial court set bail at $200,000 so that Benefield
would remain incarcerated, and the trial court’s reduction of bail from $1
million to $200,000, we cannot say that Benefield has satisfied his burden of
showing that bail in the amount of $200,000 is excessive.  See Ex parte
Poullard, No. 14-10-01034-CR, 2011 WL 304212, at *3 (Tex. App.—Houston
[14th Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication)
(holding the appellant did not meet burden of showing excessive bond and noting
that trial court had reduced bond from $1 million to $250,000); Bennett,
2007 WL 3037908, at *2–4 (affirming $200,000 bail amount).  We thus cannot hold
that the trial court abused its discretion, and we overrule Benefield’s sole
issue.

IV.  Conclusion

 

Having overruled Benefield’s sole issue, we
affirm the trial court’s order.

 

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 17, 2013








 









[1]See Tex. R. App. P. 47.4.





[2]Benefield’s wife told Detective Henderson that the child was
“smiling and fine” when she left for work that
morning.





[3]To the extent Benefield contends on appeal that there was no
probable cause to justify his detention at the time of his application for writ
of habeas corpus, that argument is now moot because of Benefield’s intervening
indictment.  See Ex parte Preston, 533 S.W.2d 820, 821 (Tex. Crim. App.
1976) (“The return of an indictment establishes probable cause as a matter of
law.  Therefore, the question of probable cause to hold appellant has been
rendered moot.”); Golden v. State, 288 S.W.3d 516, 518 (Tex.
App.—Houston [1st Dist.] 2009, pet. ref’d).  The return of the indictment does
not, however, render moot Benefield’s appeal for the reduction of the amount of
bail.  See Ex parte Johnston, 533 S.W.2d 349, 352 (Tex. Crim. App.
1976).





[4]See Tex. Penal Code Ann. § 22.04(e); see
id. § 12.32(a) (West 2011).