

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00474-CR

EX PARTE JUSTIN GREEN

----------

FROM THE 97TH DISTRICT COURT OF CLAY COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Justin Green appeals from a trial court order denying him relief on his application for writ of habeas corpus seeking a bail reduction. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Texas Ranger Marshall Thomas participated in exhuming a heavily decomposed body buried in a "shallow grave" in Clay County, Texas, in early February 2012. Thomas's investigation into the body led him to obtain an arrest warrant for Green, who had previously lived on the land where law enforcement found the body. On February 16, 2012, Arizona officials extradited Green to Texas by delivering Green to Thomas, who, accompanied by other law enforcement officers, flew Green from Phoenix, Arizona, back to Texas. Having identified the body and determined the date of death, the State charged Green with having murdered Jose Ramirez on July 25, 2007.

Prior to trial, the trial court set Green's bail at $1,000,000. Green moved the trial court to reduce the bail, and the trial court denied his motion. At trial, Green argued that he shot Ramirez in self-defense.[2] The State, however, introduced evidence that Green shot Ramirez, his friend and ex-Army mate, in the head and chest while Ramirez was unarmed and either sleeping or seated at his computer wearing only his boxer shorts. The evidence also indicates that from there, Green dragged Ramirez's body to Green's truck, which he had

---

[2]At the habeas hearing, the State introduced "all of the evidence" from the trial. Green stated affirmatively that he did not have any objection. In its oral pronouncement to deny Green's application, the trial court stated that it had considered "all of the evidence previously [introduced at trial]" in making its determination. Thus, our review of the record is not limited to the hearing transcript only. *See Ex parte Green*, 940 S.W.2d 799, 800–801 (Tex. App.—El Paso 1997, no writ).

2

parked near the garage for the purpose of transporting Ramirez's body from the residence to a pre-dug, shallow grave on the property where Green lived with his mother. Green, who at that time had recently been discharged from the Army for "patterns of misconduct" involving his repeated use of marijuana and methamphetamine, was unemployed.

The State elicited testimony from Green's sister and her best friend, Stephanie Corral. Corral specifically testified that Green had told her and his sister on multiple occasions that he had killed Ramirez and buried his body on his property. By Corral's account, Green killed Ramirez for money. Corral also stated that Green had threatened his mother, his sister, and Corral that if any one of them ever disclosed this information to anyone, he would kill them as well. The evidence shows that after he shot Ramirez, Green sent papers to Ramirez's bank and obtained a new PIN for Ramirez's debit card. From there, the evidence indicates that Green withdrew over $9,000 that had belonged to Ramirez. Green later moved to Arizona with his mother.

With a jury unable to reach a verdict, the trial court granted Green's motion for a mistrial. Green then filed an application for writ of habeas corpus, seeking a reduction in the $1,000,000 bail. After conducting a hearing, the trial court denied Green's application. This appeal followed.

### III. DISCUSSION

Setting bail is committed to the sound discretion of the trial court, but the exercise of that discretion is governed by law. *See* U.S. Const. amend. VIII; Tex.

3

Const. art. I, § 13; Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005). In setting bail, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial. *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd). Both the federal and state constitutions prohibit excessive bail. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. Bail is excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. In addition to the constitutional prohibition against excessive bail, the Texas Legislature has imposed the following statutory requirements:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In setting the amount of bail, the trial court may also give consideration to such factors as (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior

4

criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981)).

We review the trial court's ruling on a request to reduce bail under an abuse-of-discretion standard. *See Rubac*, 611 S.W.2d at 850; *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We must not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Clemons*, 220 S.W.3d at 178.

In a habeas case, the writ applicant bears the burden of proving facts that would entitle him to relief and ensuring that a sufficient record is presented to show error requiring reversal. *See Ex parte Kimes*, 872 S.W.2d 700, 703–04 (Tex. Crim. App. 1993). The burden of proof is upon an applicant who claims bail is excessive. *See Rubac*, 611 S.W.2d at 849; *Milner v. State*, 263 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

5

### A.  Statutory Factors

#### 1.  Sufficient Bail to Assure Appearance but Not Oppress

The first two statutory factors are interrelated.  The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged.  *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980). Thus, the amount of bail must be high enough to give reasonable assurance that the accused will appear as required.  *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980).  Even though bail should be sufficiently high to give reasonable assurance that the accused will appear, the power to require bail should not be used as an instrument of oppression.  *Id.*; *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex. Crim. App. [Panel Op.] 1980).  This occurs when the trial court sets bail at an amount "for the express purpose of forcing appellant to remain incarcerated" pending trial or appeal.  *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.).

Here, Green did not present any evidence at the habeas hearing that the trial court set bail in his case for the express purpose of forcing him to remain incarcerated.  And the bail the trial court set is congruent with a number of cases involving similarly alleged crimes.  *See Ex parte Garcia*, No. 09-06-00543-CR, 2007 WL 846571, *1 (Tex. App.—Beaumont Mar. 21, 2007, no pet.) (mem. op., not designated for publication) (upholding trial court order granting habeas relief and lowering murder defendant's bond from $1,000,000 to $950,000); *see also Ex parte Jackson*, 257 S.W.3d 520, 523 (Tex. App.—Texarkana 2008, no pet.)

6

(declining to reduce $750,000 bail for defendant charged with capital murder); *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth 1998, no pet.) (affirming denial of reduction of $500,000 pretrial bail in capital murder case). Although $1,000,000 is within the higher range of bails set for similar cases, Green presented no evidence that the bail set in his case required reversal, and we conclude that the trial court did not act arbitrarily in setting the amount.

### 2. Nature and Circumstances of the Offense

The nature of the offense and the circumstances surrounding the offense are primary factors in determining what constitutes reasonable bail. Tex. Code Crim. Proc. Ann. art. 17.15(3); *see Ex parte Davila*, 623 S.W.2d 408, 410 (Tex. Crim. App. [Panel Op.] 1981). In considering the nature of the offense, it is proper to consider the possible punishment. *Ex parte Vasquez*, 558 S.W.2d 477, 479–80 (Tex. Crim. App. 1977). When the nature of the offense is serious and involves aggravating factors, a lengthy prison sentence following trial is probable. *Ex parte Hulin*, 31 S.W.3d 754, 760 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Therefore, pretrial bail must be set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy sentence might be to not appear. *Id.* at 761.

The record reflects that the State indicted Green for intentionally or knowingly causing the death of Ramirez by shooting him with a gun, a first-degree felony. *See* Tex. Pen. Code Ann. § 19.02(b), (c) (West 2011). As a first-degree felony, the offense carries a sentence of five to ninety-nine years' or life

7

imprisonment, and a fine not to exceed $10,000. *Id.* § 12.32(a)–(b) (West 2011). At trial, the State introduced evidence that Green killed Ramirez by shooting him in the head and then in the chest, and then disposing the body in a shallow grave which Green had prepared prior to the shooting for the very purpose of burying Ramirez's body. Further, the evidence suggests a calculated murder motivated by money—a mere $9,000. Thus, the record reflects that the nature of the offense and the alleged circumstances surrounding its commission are very serious.

When reviewing the appropriate bail for a particular offense, appellate courts often compare bail amounts in other cases involving offenses of the same degree. This is because such offenses carry the same punishment range, which is a proper consideration in determining the nature of the offense charged. *See Charlesworth*, 600 S.W.2d at 317; *Vasquez*, 558 S.W.2d at 480; *Maldonado*, 999 S.W.2d at 95.

Texas courts have approved bail amounts as low as $1,000 and as high as $1,000,000 for first-degree felony offenses. *See, e.g.*, *Ex parte Carson*, 215 S.W.3d 921, 924 (Tex. App.—Texarkana 2007, no pet.) (setting bail at $1,000 in case involving first-degree felony offense of possession of controlled substance); *Gonzalez v. State*, 996 S.W.2d 350, 353 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (approving bail set at $90,000 in case involving aggravated robbery); *see also Pharris v. State*, No. 14-06-00788-CR, 2006 WL 3313323, at *1–2 (Tex. App.—Houston [14th Dist.] Nov. 16, 2006, pet. ref'd) (mem. op., not designated

8

for publication) (approving bail set at $500,000 in case involving offense of first-degree felony theft); *Overstreet*, 2009 WL 2196133 at *1 (upholding bail of $500,000 in murder charge); *Garcia*, 2007 WL 846571, at *1 (upholding trial court order granting habeas relief and lowering defendant's bond from $1,000,000 to $950,000); *Tran v. State*, No. 01-06-00035-CR, 2006 WL 1771815, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (mem. op., not designated for publication) (approving bail set at $800,000 for cocaine possession and $500,000 for marijuana possession); *Ex parte Cuevas*, No. 11-03-00402-CR, 2004 WL 527960, at *5 (Tex. App.—Eastland Mar. 18, 2004, no pet.) (not designated for publication) (approving bail set at $1,000,000 in case involving offense of engaging in organized criminal activity to commit theft). The bail amount set in this case, $1,000,000, is within the range of bail amounts approved for other first-degree felonies.

### 3. Ability to Make Bail

The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. [Panel Op.] 1980); *Maldonado*, 999 S.W.2d at 96. This is true even if the accused is determined to be indigent. *Charlesworth*, 600 S.W.2d at 317. If the ability to make bail in a specified amount controlled, the role of the trial court in setting bail would be unnecessary and the accused would be able to set his own bail. *Hunt*, 138 S.W.3d at 506.

9

Green presented some evidence that he could not afford to post bail. He testified that the bond company would expect him to put up $100,000 but that he possessed no assets and was unemployed. And the record reflects that the trial court appointed Green counsel based on his indigence. This factor supports Green's contention that the bail is excessive, but the accused's inability to make bail, even to the point of indigence, does not control over the other factors. *See Ex parte Parker*, 26 S.W.3d 711, 712 (Tex. App.—Waco 2000, no pet.).

### 4. Future Safety of the Community

The final statutory factor examines the safety of the victim and the community if the defendant were to be released on bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). In this case, testimony adduced at trial indicates that Green threatened to kill his mother, his sister, and his sister's best friend if they revealed to anyone that he had shot and killed Ramirez and buried his body. There is also evidence in the record that Green has previously been charged with the theft of firearms and body armor, armor that he allegedly stole from the Army. There is also evidence that Green has unlawfully brought firearms onto premises licensed to sell alcoholic beverages and that he has been convicted of driving under the influence. Further, there is record evidence that when officers arrested Green for the offense in which he was wearing the body armor, he told the arresting officers that he "has angry outbursts and homicidal tendencies." These actions bode ill for the future safety of the community should Green be released within it on a lower bond.

10

Based on this evidence, the trial court could have found that Green posed a threat to the community and that the $1,000,000 bail was necessary to ensure safety of the community. This factor supports that the trial court did not act arbitrarily by denying Green's application to reduce bail.

### B.    *Rubac* Factors

The remaining non-statutory factors also support that the trial court did not act outside the zone of reasonable disagreement by denying Green's request to lower the $1,000,000 bail amount. Although Green presented evidence that he has an in-law in Clay County willing to let Green stay at his ranch, the record demonstrates that after he killed Ramirez, Green and his mother moved to Arizona. In fact, Arizona extradited Green to Texas in order for him to face this present charge.

Furthermore, the record demonstrates that Green has an extensive record of past infractions involving drugs and firearms. And although there is no evidence that Green has violated past conditions of previous bonds, the aggravating circumstances of the present offense are considerable. Green is alleged to have shot Ramirez, his friend and ex-Army mate, in the head as he either sat at his computer or slept. When Green shot him, Ramirez wore only a pair of boxer shorts. The evidence also reveals that Green pre-meditated killing Ramirez. Indeed, the evidence suggests that Green had already dug the shallow grave where he eventually buried Ramirez's body prior to shooting him and that Green had even backed up his truck to the garage in anticipation of removing

11

Ramirez's body.  The consideration of the non-statutory factors supports that the trial court did not act arbitrarily or unreasonably by denying Green's application to reduce the $1,000,000 bail amount.

## IV. CONCLUSION

Although Green presented some evidence of his inability to make bail at the habeas hearing, the nature and aggravating circumstances of the charged offense, the future safety of the community, Green's prior criminal history, and the fact that he moved to Arizona after having shot Ramirez and disposed of his body in a pre-dug, shallow grave support that the trial court did not abuse its discretion by denying Green's application for writ of habeas corpus seeking a bail reduction.  *See Jackson*, 257 S.W.3d at 523 (holding that bail of $750,000 for defendant charged with murder as shooter during robbery was within range of bail for similar crimes).  We affirm the trial court's order.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 13, 2014

12