**Francisco Rivera AVILES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00168–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 3, 2000.

Matt Hennessy, Houston, TX, John M. Parras, Houston, TX, for appellants.

William J. Delmore III, Houston, TX, for appellees.

Panel consists of Justices ANDERSON, FROST, and LEE.*

## ORDER SETTING BAIL

ANDERSON, Justice.

On May 18, 2000, this court issued an opinion reversing appellant's conviction for possession with intent to deliver a controlled substance, namely cocaine. After we reversed his conviction, appellant filed a motion pursuant to article 44.04(h) of the Code of Criminal Procedure asking this court to set bail in the amount of $10,-000.00. The State filed a response to appellant's motion arguing that we should set bail at $1,000,000.00, essentially the same amount set by the trial court for appellant's appeal bond. We grant appellant's motion and set bail at $10,000.00.

* Senior Judge Norman R. Lee sitting by assignment.

Appellant was convicted of possession with intent to deliver more than four hundred (400) grams of cocaine. After the trial court denied appellant's pretrial motion to suppress, it sentenced him to thirty-five years confinement in the Texas Department of Criminal Justice—Institutional Division. On May 18, 2000, this court unanimously overturned appellant's conviction holding that the trial court erred in denying appellant's motion to suppress the cocaine seized during the search of his vehicle because the officer lacked reasonable suspicion to justify appellant's detention. *See Aviles v. State*, 23 S.W.3d 74, 78–81 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.). Based on our decision to reverse his conviction, appellant filed his motion for bail under article 44.04(h) of the Texas Code of Criminal Procedure. *See* Tex.Code Crim.Proc.Ann. art. 44.04(h) (Vernon Pamph.2000). Appellant's motion was filed before the State filed its petition for discretionary review. Accordingly, this court is charged with determining the amount of bail. *See id.*

Article 44.04(h) of the Texas Code of Criminal Procedure states, in pertinent part:

> If a conviction is reversed by a decision of a Court of Appeals, the defendant, if in custody, is entitled to release on reasonable bail, regardless of the length of term of imprisonment, pending final determination of an appeal by the state or the defendant on a motion for discretionary review.

*Id.*

The question that arises in the context of appellant's motion is what factors should *the appellate court consider in determining "reasonable bail"* under article 44.04(h). We have found no cases discussing this issue.

When determining the proper amount of pretrial and appeal bonds, the courts have held that the primary goal is to secure the presence of the accused. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex.Crim. App. [Panel Op.] 1980); *Maldonado v. State*, 999 S.W.2d 91, 93 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). Article 17.15 of the Code of Criminal Procedure states that in determining the amount of bail in any case, courts are to be guided by certain rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded.
5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex.Code Crim.Proc.Ann. art. 17.15 (Vernon Supp.2000).

In addition to considering the rules contained in article 17.15, the courts have held there are seven additional factors to be considered in determining the amount of bond: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim.App. [Panel Op.] 1981).[1]

Of all the factors listed in article 17.15 and in *Rubac*, the Court of Criminal Ap-

---

1. Although *Rubac* involved the setting of an appeal bond rather than pretrial bond, several courts have applied these factors in reviewing pretrial bond. *See, e.g., Maldonado v. State*, 999 S.W.2d 91, 93–94 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Ex parte Emery*, 970 S.W.2d 144, 145 (Tex.App.—Waco 1998, no pet.); *Smith v. State*, 829 S.W.2d 885, 887 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

peals and this court have recognized that two factors should be given great weight when determining the amount of bail: the nature of the offense and the length of the sentence. *See Rubac,* 611 S.W.2d at 849; *Hughes v. State,* 843 S.W.2d 236, 237 (Tex. App.—Houston [14th Dist.] 1992, no pet.).

■ After reviewing article 17.15, article 44.04(h), and bail cases in the context of pretrial bail and post-conviction bail, we hold that we should consider those factors contained in article 17.15 of the Code of Criminal Procedure and those set out in *Ex parte Rubac,* 611 S.W.2d 848, 849 (Tex. Crim.App. [Panel Op.] 1981). However, we reject the notion that the nature of the offense and the length of sentence should be given great weight when the request for reasonable bail is made pursuant to article 44.04(h). Once a conviction is reversed, we hold the primary factors that should be considered by the court of appeals are: (1) the fact that the conviction has been overturned; (2) the State's ability, if any, to retry the appellant; and (3) the likelihood that the decision of the court of appeals will be overturned.

The dissent contends that just as in pretrial and appeal bond cases, the overriding considerations after a conviction is reversed should still be the length of appellant's sentence and the nature of the offense. We respectfully, but strongly, disagree. The situation following a reversal of a conviction is much different from that of pretrial or post-conviction bail; especially, as in this case, where the State admits that a retrial is "precluded." Moreover, article 44.04(h) states that the court of appeals must set bail regardless of the length of imprisonment. *See* TEX.CODE CRIM.PROC.ANN. art. 44.04(h) (Vernon Pamph.2000). Thus, we conclude that the primary considerations after a conviction has been overturned regarding bail under article 44.04(h) must be different from those relevant to determining bail pretrial or during the initial appeal.

■ The dissent's contention that a bond of $999,999.00, the same amount set by the trial court for the appeal bond, is a reasonable bail pending disposition of the State's petition for discretionary review is unpersuasive because it is based in large part on two faulty assumptions: (1) that the State may actually retry appellant; and (2) that our decision in the underlying appeal may likely be reversed. Based on these two assumptions, the dissent contends that bail must be set at almost one million dollars ($1,000,000.00) because appellant has "a serious and compelling motivation to flee." We find these premises and the resulting conclusion unsound.

First, the State *will not* retry appellant when the case is remanded. The dissent states that the State has "essentially" conceded that "a retrial would be unlikely." The dissent understates the position asserted by the State in its response to appellant's motion for bail. The State admitted in its response that if our decision is upheld, a retrial would be "precluded," not just "unlikely." The dissent also claims that "regardless of whether this court's ruling is upheld, appellant will still be subject to further prosecution." While technically this is correct because the case has been remanded for further proceedings based on our decision of May 18, 2000, in actuality this contention is false because the State has conceded that any retrial would be precluded.

Second, we find it unlikely that our judgment reversing appellant's conviction will be overturned. Our confidence in our decision stems from a relatively recent decision of the Court of Criminal Appeals in which the court refused a State's petition for discretionary review in a case decided on similar facts. *See Hernandez v. State,* 983 S.W.2d 867, 869 (Tex.App.— Austin 1998, pet. ref'd). This court relied heavily on the *Hernandez* decision in the underlying appeal.

In *Hernandez,* the defendant's truck veered into an adjacent lane. *Id.* at 868. The defendant was stopped by a police

officer. *See id.* The officer conducted a field sobriety test and determined appellant was intoxicated. *See id.* Appellant was charged with driving while intoxicated. *See id.* at 867. At trial, the defendant filed a motion to suppress alleging the initial stop was not justified and, therefore, all evidence of his intoxication should be excluded. *See id.* at 868. To support its contention that the stop made by the officer was justified, the State called the officer to testify at the suppression hearing. *See id.* The officer testified he stopped the defendant because he had committed a ticketable traffic offense, i.e., failure to maintain a single-marked lane of traffic in violation of section 545 .060(a) of the Texas Transportation Code. *See id.* Only after he properly stopped the defendant did he detect signs of intoxication. *See id.*

After his conviction, the defendant sought review by the Third Court of Appeals. In its decision, the court held that because the State produced no evidence that the defendant's movement into the adjacent lane was unsafe or dangerous, the officer did not have a reasonable basis for believing the defendant had committed a ticketable traffic offense. *See id.* at 871–72. Accordingly, the court held the evidence of the defendant's intoxication should have been suppressed and it reversed appellant's conviction. *See id.* at 872. The State filed a petition for discretionary review which was refused by the Texas Court of Criminal Appeals.

In deciding the underlying appeal in this case, we relied on *Hernandez.* As in *Hernandez,* the State in this case produced no evidence that appellant's multiple lane change was unsafe or dangerous, and therefore, a violation of section 545.060 of the Texas Transportation Code. Moreover, in our opinion we noted that "making a deliberate move across two lanes of freeway traffic is arguably a safer maneuver than weaving or drifting into adjacent lanes." In other words, the situation before us was even clearer than that in *Hernandez.* Accordingly, we found the trial

court erred in denying appellant's motion to suppress. Given the similarity between the facts and the legal issues in the two cases, we believe it is extremely unlikely that the Court of Criminal Appeals would refuse to grant review in *Hernandez,* yet grant in this case and ultimately reverse our judgment. But beyond our reliance on the decision to refuse petition in *Hernandez,* is our belief that our decision in the underlying appeal is legally correct. The dissent's contention that bail should be set at almost one million dollars ($1,000,-000.00) is puzzling because it seems to evince a lack of confidence in our original decision. We do not share this lack of confidence.

■ The State and the dissent also urge that a high bail is appropriate in this case because of the amount of drugs (60 kilograms) appellant was convicted of possessing. In other words, the State and the dissent place great emphasis on the nature of the offense. While we find this is a proper, if not overriding, consideration for setting a high bail in the pretrial and appeal bond contexts, as we stated before, we find it of much less importance when the conviction has been overturned and the State cannot retry the defendant. We agree that, prior to conviction and after conviction, "monied backers" may consider the cost of bail a normal business expense. *See Maldonado,* 999 S.W.2d at 96. This consideration, however, is of less concern when the defendant's conviction has been reversed and the State admits it cannot retry him.

■ The dissent also contends that the length of sentence, thirty-five years, is a consideration to be given heavy weight in the bail determination. Again, we agree that this is a primary consideration in the setting of pretrial and appeal bonds; however, we find it of decreased importance when the conviction has been reversed and a retrial is precluded. Appellant is only facing a lengthy sentence in this case if our judgment is reversed (given that the State has admitted he will not be retried). We

decline to give this factor undue weight under these circumstances. Additionally, article 44.04(h) states the defendant must be released on reasonable bail "regardless of the length of term of imprisonment." TEX.CODE CRIM.PROC.ANN. art. 44.04(h) (Vernon Pamph.2000). Based on this language, we find that once a conviction is reversed, the length of sentence is no longer a primary consideration in determining reasonable bail.

We must determine a reasonable amount of bail taking into account the rules of article 17.15, the *Rubac* factors, and the three primary factors we have announced today that are relevant to article 44.04(h). In support of his motion requesting bond in the amount of $10,-000.00, appellant's counsel, at this court's request, provided information concerning appellant's work history, family and community ties, length of residence, prior criminal record, conformance with previous bond conditions, and existence of outstanding bonds.

Appellant moved to Houston with his family in 1974. Twelve years ago he moved to Florida where he met and married his wife. They moved to Houston and have lived here continuously since 1991. Appellant has strong family ties to Houston. Appellant and his wife have four children ages eleven, eight, six, and two. All of the children were born in Texas. The three oldest children attend school in Houston. Appellant's parents, sisters, brother, and numerous nieces and nephews reside in Houston.

Appellant has worked at various local companies in Houston since 1991: V.H. Max Trucking (1996–1998); Bronco Tires (1994–1996); Ranco Mats and Matting (1991–1994). Upon release, appellant contends he will work for Lopez & Sons Tire Service, another Houston company. He also owns a dump truck and will return to using it as an independent contractor of demolition services for V.H. Max Trucking.

Appellant does have a prior criminal record. He is on 10 years probation for possession of marijuana in Kleberg County, Texas. Appellant has never violated a condition of bond and currently has no outstanding bonds.

Appellant has been incarcerated since August of 1998. His family will attempt to raise money for bail, but does not have the capacity to make bail of more than $10,-000.00.

Based on this information, the fact that appellant's conviction has been reversed, the State's admission that appellant will not be retried, and our confidence that this court's judgment will not be overturned, we find bail in the amount of $10,000.00 to be reasonable.

Under the circumstances of this case, to require bail in the amount suggested by the State and the dissent would transform bail into an instrument of oppression in violation of article 17.15 of the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC.ANN. art. 17.15(2) (Vernon Supp. 2000). Accordingly, we grant appellant's motion and order bail set in the amount of $10,000.00. Any sureties on the bail must be approved by the trial court. *See* TEX. CODE CRIM.PROC.ANN. art. 44.04(h) (Vernon Pamph.2000).

FROST, J., dissenting.

FROST, Justice, dissenting on order setting bail.

The primary goal in setting bail on appeal is to ensure that the defendant will be available for incarceration should the conviction be affirmed. *See Ex parte Rubac,* 611 S.W.2d 848, 849 (Tex.Crim.App. [Panel Op.] 1981). Therefore, any determination of the "reasonableness" of bail must be made in light of this purpose. *See Valenciano v. State,* 720 S.W.2d 523, 524 (Tex. Crim.App.1986). The Court of Criminal Appeals has devised certain factors to determine reasonable bail during a post-conviction appeal. *See Ex parte Rubac,* 611 S.W.2d at 849. The two primary factors are the (1) length of the sentence and (2)

nature of the offense. *See id.* Additionally, the court has noted that the petitioner's work history, ties to the community, ability to make bail, criminal record, and other bond or bail experiences may be considered. *See id.* at 849–50. There is little, if any, case law that specifically addresses the factors to be considered in setting bail during the period after an intermediate appellate court has reversed a conviction while the State is pursuing review in the Court of Criminal Appeals. Having concluded that the considerations after the intermediate court has overturned a conviction must be different from those relevant to determining bail pretrial or during the initial appeal, the majority today pronounces three new "primary factors" an intermediate court should consider in setting bail in addition to the well established *Rubac* factors and the rules of article 17.15 of the Texas Code of Criminal Procedure. These new "primary factors," however, utterly fail to recognize that the chief purpose of bail following reversal of a conviction remains the same: *to assure the presence of the defendant and his availability for incarceration if his sentence is ultimately upheld.*

The first new "primary factor" the majority identifies—the fact that the conviction has been overturned—goes to *eligibility* for bail, not to the *reasonableness* of bail. The Texas Code of Criminal Procedure *requires* a court of appeals to grant reasonable bail upon a reversal of a conviction if bail is allowed for such a charge and the defendant requests bail before a petition for discretionary review is filed. *See* TEX.CODE CRIM.PROC.ANN. art. 44.04(h) (Vernon Supp.2000). The State does not challenge appellant's eligibility for bail under this provision. More importantly, reversal and remand of the conviction is not a valid consideration in determining the *amount* of bail; a reversal is a prerequisite to bail following a ruling by an intermediate appellate court. *See id.* Indeed, the *only* time a defendant is eligible for bail under article 44.04(h) is when his conviction has been overturned. Thus, ele-

vating this statutory prerequisite to a "primary factor" to be considered in determining the *amount* of bail serves no purpose other than to weight the outcome in favor of the movant/defendant. Simply stated, under the new standards the majority announces today, the defendant, if eligible for relief under article 44.04(h), will *always* satisfy one of the three "primary factors" the court is to consider in setting reasonable bail.

The second factor—the State's ability to retry appellant—assumes that there is only one possible outcome in the Court of Criminal Appeals (affirmance) and totally ignores the fact that this court's holding could be reversed and appellant's lengthy sentence reinstated. Furthermore, an order effectively granting appellant's motion to suppress evidence does not necessarily and automatically terminate the prosecution. In such a case, the defendant remains under indictment, the purpose of bail remains the same, and the defendant's bail status is unchanged.

The third factor—the likelihood that the decision will be overturned—focuses on the merits of the underlying case and not on the intended role of bail on appeal, which is to ensure the defendant's availability for incarceration should his sentence be reinstated. It serves no purpose for an intermediate appellate court to handicap its chances of affirmance or reversal on subsequent review by a higher court. Engaging in an analysis based on appellate probabilities of affirmance or reversal is fraught with uncertainty and places an intermediate court in the awkward position of publicly evaluating the strengths and weaknesses of its own analysis while the case is still moving through the appellate process.

The majority perceives that setting bail in the same amount set pretrial and on appeal evinces a "lack of confidence in our original decision;" however, this perception is neither an accurate reflection of reality nor a cogent consideration in determining

reasonable bail. First, the court is presumed to stand by its decision. It goes without saying that the result this court reached in the underlying case is, *in this court's view*, the correct and most likely outcome in the higher court. Second, and more importantly, this court's focus in setting bail should be on fulfilling the primary purpose of bail (to ensure the defendant's availability for incarceration in the event his sentence is reinstated) and not on bolstering the soundness or logic of its decision in the underlying case. Third, setting a high bail amount in a case that the court has reversed and remanded for a new trial does not bespeak a lack of confidence in the holding but rather evinces a recognition of the realities of the appellate process, a process that is *not yet complete* and which could ultimately yield a reinstatement of appellant's very lengthy prison sentence.

For these reasons, the majority's pronouncement and adoption of the three new "primary factors" does not advance the legitimate ends and objectives of setting bail. A far better approach is to rely on generally accepted standards for setting reasonable bail pending appeal. According to this court's opinion in *Hughes v. State*, 843 S.W.2d 236 (Tex.App.—Houston [14th Dist.] 1992, no pet.), the length of the sentence should be a primary factor considered in this analysis. 843 S.W.2d at 237. Here, appellant was sentenced to thirty-five years' incarceration; thus, if this court's opinion is reversed and appellant's sentence is reinstated, he faces the certainty of spending a very long time in prison. This factor, coupled with the inherent uncertainty and risk of proceeding through the appellate process, clearly suggests a serious and compelling motivation to flee. This motivation, in turn, substantially impacts the primary·goal of setting bail and supports bail in an amount that is sufficient to ensure appellant's availability for incarceration should the higher court reverse our ruling. Nevertheless, the majority finds this factor of "decreased importance" and declines to give it "undue

weight." Citing to the language in article 44.04(h) that states a defendant must be released on reasonable bail "regardless of the length of term of imprisonment," the majority concludes that the length of the sentence is no longer a primary consideration in determining reasonable bail. This statutory provision, however, speaks to the *availability*, not the *amount*, of reasonable bail. As noted, appellant's eligibility for bail is not in issue. Furthermore, the majority's refusal to recognize the length of the sentence as a primary factor in the bail analysis is inconsistent with at least one other intermediate appellate court that has considered the issue. *See Dees v. State*, 722 S.W.2d 209, 216 (Tex.App.—Corpus Christi 1986, pet. ref'd) (per curiam) (considering punishment assessed in setting bail after reversal of conviction).

The second factor to which great weight is generally accorded in the determination of reasonable bail is the nature of the offense. *See Hughes*, 843 S.W.2d at 237. We have noted "that cases involving offenses based on the illegal manufacture, transportation and sale of large quantities of drugs give rise to special considerations and often justify high pre-trial bonds." *Brown v. State*, 11 S.W.3d 501, 503 (Tex. App.—Houston [14th Dist.] 2000, no pet.). This court and others have expressly noted that because drug-related activities usually require multiple transactions of a transitory nature, by the very nature of the operation, participants in the transport and sale of illegal drugs must be highly mobile. *See id.* at 503 (citing *Ex parte Martinez–Velasco*, 666 S.W.2d 613, 616 (Tex.App.—Houston [1st Dist.] 1984, no pet.)). Moreover, the large amount of cash required to effect these kinds of transactions suggests involvement of monied backers who may consider the cost of bail as a normal business expense, which they may be willing to forfeit and write off as one of the costs of operating this type of business. *See id.* (citing *Ex Parte Willman*, 695 S.W.2d 752, 753 (Tex.App.—Houston [1st Dist.] 1985, no pet.); *Martinez–Velasco*, 666 S.W.2d at

616). Thus, in cases involving large quantities of illegal drugs, a high bond may be required to assure the presence of the defendant at trial. *See id.* (citing *Ex Parte Willman*, 695 S.W.2d at 753; *Martinez–Velasco*, 666 S.W.2d at 616). Consequently, high pre-trial bonds have been upheld on numerous occasions for offenses involving possession of large quantities of a controlled substance. *See, e.g., Patterson v. State*, 841 S.W.2d 534, 536 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (setting bond at $150,000 for one kilogram of cocaine); *Ex parte Bonilla*, 742 S.W.2d 743, 745 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (setting bond at $250,000 for five kilograms of cocaine); *Ex parte Willman*, 695 S.W.2d at 754 (setting bond at $300,000 for two kilograms of cocaine); *Ex parte Mudragon*, 666 S.W.2d 617, 618 (Tex.App.—Houston [1st Dist.] 1984, no pet.) (setting bond at $250,000 for six kilograms of cocaine); *Ex parte Martinez–Velasco*, 666 S.W.2d at 617 (setting bond at $375,000 for six kilograms of cocaine).

In this case, appellant was convicted of possession with intent to deliver approximately sixty kilograms of cocaine with a street value of nearly $6,000,000, which is at least ten times the amount of controlled substance in each of the cited cases. Under these circumstances, there is great incentive for this court to set bail in an amount sufficiently high to ensure that appellant will be available to serve his sentence should it be reinstated in the future. However, the majority sets bail at $10,000, an amount which is nominal in a case charging such a serious drug offense. Indeed, in cases involving less serious offenses, bail is generally set at several times that amount. *See, e.g., Kline v. State*, 710 S.W.2d 717, 719 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd) (refusing to reduce a $500,000 appeal bond for the offense of misappropriating fiduciary property over the value of $10,000); *Cuellar v. State*, 985 S.W.2d 656, 657 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (enforcing an appeal bond of $100,000 for theft of an amount greater than $200,000);

*Perez v. State*, 897 S.W.2d 893, 898 (Tex. App.—San Antonio 1995, no pet.) (enforcing a $25,000 appeal bond for driving while intoxicated). Bail in the $10,000 range is more appropriate for crimes carrying much less severe penalties. *See, e.g., Grady v. State*, 962 S.W.2d 128, 132 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (enforcing a $10,000 appeal bond for driving while intoxicated); *Read v. State*, 959 S.W.2d 228, 230 (Tex.App.—Fort Worth 1998, no pet.) (setting appeal bond at $10,000 for driving while intoxicated); *Dallas v. State*, 945 S.W.2d 328, 329 (Tex. App.—Houston [1st Dist.] 1997), *vacated on other grounds*, 983 S.W.2d 276 (Tex. Crim.App.1998) (setting appeal bond at $10,000 for cruelty to animals). Setting bail in a nominal amount for a very serious drug offense involving millions of dollars of illegal narcotics does not further the goal of ensuring appellant's availability for incarceration should his sentence be reinstated and is nearly tantamount to setting no bail at all.

While appellant shows ties to the community and a record of sustained employment, these factors are considered mere "supportive data" and, by traditional standards, do not weigh as heavily as the length of the sentence and the nature of the offense in determining the amount of bail. *See Hughes*, 843 S.W.2d at 237; *see also Mudragon*, 666 S.W.2d at 617 (finding that strong ties to the community would be insufficient to reduce bond below $250,000). Appellant also relies on his assertion that he would not be able make bail above $10,000. However, this court has specifically noted that "the ability of an accused to post bail is a factor to be considered, but the inability to make the bail ... does not automatically render the bail excessive." *Maldonado v. State*, 999 S.W.2d 91, 96 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). Thus, ties to the community and inability to make a high bail are insufficient on their face to preclude setting a high bail amount.

Notably, this is the *third* time appellant has sought bail in connection with this offense. Both previous requests were made in the trial court, which is presumed to have considered these same factors in setting reasonable bail pretrial and pending appellant's appeal to this court at $999,999. In setting bail in the nominal sum of $10,000, the majority points to no change in circumstances other than this court's reversal and remand of appellant's conviction. The majority reasons that if this court's decision is upheld, retrial would be futile in light of this court's finding that the evidence seized from appellant's vehicle was illegally obtained and not admissible in any retrial for the charged offense. While the State essentially concedes that, as a practical matter under these circumstances, a retrial would be unlikely, the fact remains that appellant was not acquitted and the State has sought further review from a higher court. *The appellate process is not over.* Furthermore, assuming this court's ruling is upheld, appellant will remain under indictment and will still be subject to further prosecution. For this reason, this court's reversal and remand of appellant's conviction when the State has sought further review does not impact the primary goal of setting bail in any significant way.

Considering the two generally accepted primary factors of the length of the sentence and the nature of the offense, coupled with the certainty of appellant's lengthy incarceration should this court's ruling be reversed, there is a strong motivation for appellant to flee pending further appeal. Although appellant has shown some ties to the community and alleges an inability to post a bond over $10,000, he has not provided any significant facts that outweigh the primary factors as established by existing case law or made any other showing to support reasonable bail in an amount that is less than the amount set on the two prior occasions. Therefore, the primary objective of setting bail is served by setting bail at or near the amount originally set in the trial court.