**Motion Granted; Order and Dissenting Opinions filed October 18, 2018.**



In The

# Fourteenth Court of Appeals

———————

NO. 14-15-01005-CR
NO. 14-15-01006-CR

———————

## NATHAN RAY FOREMAN, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause Nos. 1374837 & 1374838**

## DISSENT TO EN BANC ORDER SETTING BAIL

Today the en banc court speaks for the first time on a topic few published opinions address: the factors to be considered in determining the amount of reasonable bail under Texas Code of Criminal Procedure article 44.04(h), a statute that applies after an intermediate court of appeals reverses a conviction.

Eighteen years ago in *Aviles v. State*, a panel of this court concluded that in making the 44.04(h) determination, courts primarily should consider three factors: (1) the fact that the conviction has been overturned; (2) the State's ability, if any, to retry the appellant; and (3) the likelihood that the decision of the court of appeals will be overturned (the "*Aviles* Factors").[1]  More than a decade before, the Court of Criminal Appeals, in *Montalvo v. State*, determined the amount of reasonable bail under article 44.04(h) without giving primary consideration to any of these factors.[2] The legal standard the *Aviles* court created conflicts with the high court's *Montalvo* precedent.  Instead of embracing the *Aviles* legal standard, today the en banc court should step away from the *Aviles* Factors and instead apply *Montalvo*'s multi-factor balancing test.[3]

*The Court of Criminal Appeals's Precedent in the Montalvo Case*

In *Montalvo*, the intermediate court of appeals reversed the defendant's conviction, and the defendant requested release on reasonable bail under article 44.04(h) after the State filed a petition for discretionary review by the Court of Criminal Appeals.[4]  Because the defendant requested release on reasonable bail after the State sought high-court review, article 44.04(h) required the Court of Criminal Appeals to determine the amount of reasonable bail.[5]  We stand in the same spot

---

[1] *See Aviles v. State*, 26 S.W.3d 696, 698–99 (Tex. App.—Houston [14th Dist.] 2000, published order).

[2] *See Montalvo v. State*, 786 S.W.2d 710, 710–11 (Tex. Crim. App. 1989).

[3] *See id.*

[4] *See id.*

[5] *See* Tex. Code Crim. Proc. Ann. art. 44.04(h) (West, Westlaw through 2017 1st C.S.).

today, the bail-setting task having fallen to us instead of the high court because appellant filed the bail request before seeking high-court review.[6]

In considering reasonable bail, the *Montalvo* court listed, and the defendant thoroughly detailed, the following criteria: (1) the nature of the offense, (2) the ability to make bail, (3) defendant's prior criminal record, (4) defendant's employment record, (6) defendant's family and community ties, (7) the defendant's length of residency in the community.[7] The *Montalvo* court stated that that other factors might be relevant in determining the amount of reasonable bail under article 44.04(h).[8] Based on these factors, the *Montalvo* court found that $25,000 was a reasonable bail amount.[9] In doing so, the *Montalvo* court did not state that courts should give primary consideration to any factors or that any factor was a primary factor.[10]

### This Court's Precedent in the Aviles Case

The *Aviles* court, noting that it found no cases discussing how to determine the amount of reasonable bail under article 44.04(h),[11] concluded that in making this determination, courts should consider the five factors listed in Code of Criminal Procedure article 17.15 (rules for fixing amount of bail),[12] as well as the following

---

[6] *See id*.

[7] *See Montalvo*, 786 S.W.2d at 711.

[8] *See id*.

[9] *See id*.

[10] *See id*.

[11] *See Aviles*, 26 S.W.3d at 698.

[12] Code of Criminal Procedure article 17.15, entitled "Rules for fixing amount of bail," recites the following "rules" for determining the bail amount:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

3

factors: "(1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense."[13] These parts of *Aviles* are consistent with *Montalvo*.[14] But the part of *Aviles* that introduces the *Aviles* Factors[15] conflicts with the *Montalvo* precedent because the Court of Criminal Appeals did not state that courts should give primary consideration to any factor.[16]

Significantly, the *Aviles* court did not cite, discuss, distinguish, or purport to apply the *Montalvo* opinion.[17] The *Aviles* court did not even mention *Montalvo,* so *Aviles* is not an interpretation of *Montalvo* that is binding on panels of this court.[18] Because *Aviles* conflicts with *Montalvo*, *Aviles* is not binding precedent in this court.[19]

---

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (West, Westlaw through 2017 1st C.S.).

[13] *Aviles*, 26 S.W.3d at 698.

[14] *See Montalvo*, 786 S.W.2d at 711.

[15] *See Aviles*, 26 S.W.3d at 699.

[16] *See Montalvo*, 786 S.W.2d at 711.

[17] *See Aviles*, 26 S.W.3d at 698–701.

[18] *See id.*

[19] *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc).

The *Aviles* court created a new layer of factors for the 44.04(h) bail determination and then elevated those factors above all others.[20]  Because the *Aviles* framework is at odds with *Montalvo*[21] and the *Montalvo* precedent is on point, this court should follow *Montalvo* rather than the *Aviles*-Factors holding from this court.[22]  And, that is not the only reason to step away from the *Aviles* model of bail-setting.

### The Aviles Factors

Even if *Montalvo* did not stop this court from giving primary consideration to the *Aviles* Factors, the en banc court should not embrace the *Aviles* framework. Elevating the *Aviles* Factors above all other considerations does not yield the best legal standard in the context of a bail-amount determination under article 44.04(h).

The *Aviles* court did not cite any statutory authority or any case requiring the bail-setting court to give primary consideration to the *Aviles* Factors.[23]  All three factors fail in logic and application.

The first *Aviles* factor — the overturning of the conviction — goes to *eligibility* for bail, not to the *reasonableness* of bail.  If a court of appeals reverses a judgment of conviction, the Texas Code of Criminal Procedure requires that, upon request, a defendant in custody must be released on reasonable bail pending final determination of an appeal by the state or the defendant on a petition for discretionary review.[24]  Though reversal of the conviction provides a defendant in

---

[20] *See Aviles*, 26 S.W.3d at 698–99.

[21] *See Montalvo*, 786 S.W.2d at 711; *Aviles*, 26 S.W.3d at 698–99.

[22] *See Glassman*, 347 S.W.3d at 781 (explaining that this court is not bound by a prior holding of this court if the prior holding conflicts with a decision from a higher court that is on point).

[23] *See Aviles*, 26 S.W.3d at 698–99.

[24] *See* Tex. Code Crim. Proc. Ann. art. 44.04(h).

custody with the opportunity to request release on reasonable bail, it is not a valid consideration in setting the amount of bail.[25]

Elevating article 44.04(h)'s statutory prerequisite for bail eligibility to a "primary factor" to be considered in fixing reasonable bail serves no purpose other than to weigh the outcome in favor of the defendant. Under the *Aviles* framework, the defendant, if eligible for relief under article 44.04(h), *always* will satisfy one of the three "primary factors" the court is to consider in setting reasonable bail. It makes no sense to make the reversal of the conviction a factor at all, let alone a primary factor.

The second primary factor under *Aviles* — the State's ability to retry appellant — assumes that affirmance is the only potential outcome in the Court of Criminal Appeals and ignores the possibility that the intermediate court's holding could be reversed and the defendant's sentence reinstated.

In setting the amount of reasonable bail at a small amount in the context of the case, the *Aviles* court pointed to no change in circumstances other than the panel's reversal of the conviction and remand for further proceedings.[26] The *Aviles* court reasoned that if the panel's decision were upheld, retrial would be futile in light of the panel's finding that the evidence seized from Aviles's vehicle was illegally obtained and not admissible in any retrial for the charged offense.[27] Yet, an order effectively granting a defendant's motion to suppress evidence does not necessarily and automatically terminate the prosecution. The defendant remains under indictment and the main purpose of bail — to ensure the defendant's presence at trial — remains the same. So, the defendant's bail status should not change based on the

---

[25] *See id.*

[26] *See Aviles*, 26 S.W.3d at 698–99.

[27] *See id.* at 699.

State's ability to retry the defendant. This factor invites the court to guess what might happen on retrial — to engage in the type of speculative and advisory musings the law usually condemns. Even if it were proper to consider this factor, no good reason exists to require that courts give primary consideration to it.

The third *Aviles* factor — the likelihood that the decision will be overturned — focuses on the merits of the underlying case and not on the intended role of bail on appeal. It serves no purpose for an intermediate appellate court to handicap its chances of affirmance or reversal upon review by a higher court. Gauging appellate probabilities places an intermediate court in the awkward position of publicly evaluating the strengths and weaknesses of its own analysis while the case is still moving through the appellate process.

The *Aviles* court reasoned that setting bail in the same amount set pretrial and on appeal evinces a "lack of confidence in [the court's] original decision,"[28] a conclusion that neither accurately reflects reality nor produces a logical factor for determining reasonable bail. Today, the en banc court considers the prospect of reversal of its en banc decision and notes its reluctance "to predict the future actions of the Court of Criminal Appeals should discretionary review be sought."[29] The en banc court then pronounces its confidence in its analysis, underscoring the thoroughness and correctness of its work product.[30] Not surprisingly, no court applying *Aviles* ever has pronounced a lack of confidence in the court's decision or pointed out shortcomings in the court's review or analysis, though some (including today's en banc majority) have expressed reluctance to make the evaluation.[31] No

---

[28] *Id*. at 700.

[29] *See ante at* 3.

[30] *See ante at* 3–4.

[31] *See ante at* 3–4; *Werner v. State*, 445 S.W.3d 301, 305 (Tex. App.—Houston [1st Dist.] 2013, order) (citing Seventh Court of Appeals opinion and stating "[w]e share our sister courts' hesitation

7

court — including the *Aviles* court — has explained why confidence in the court's own work should drive or even inform the determination of a reasonable bail amount.

The bench, the bar, and the public will presume that the court stands by its decision without the court saying so. And, if a court applying the third *Aviles* factor were to assess its work product as unlikely to be affirmed, that exercise would serve no purpose other than to undermine public confidence in our courts.

In setting a reasonable bail amount in a case in which this court has reversed the conviction, we must recognize the realities of the appellate process, a journey that is not yet over and that might end in reinstatement of a lengthy prison sentence. If the Court of Criminal Appeals declines to review our decision or upholds the en banc court's ruling, the appellant will remain under indictment and will be subject to further prosecution. This court should not give primary consideration to the likelihood that its decision on the merits of this appeal will be overturned. Even if it were proper to count this factor, no good reason exists to require that courts give primary consideration to it.

In sum, the *Aviles* framework has proven unworkable. It demands that courts give mere eligibility for bail primary consideration in setting the amount of bail. It invites courts to base an important decision on the court's best guess of uncertain future events. It commands courts to critique their own opinions before a case is over. And, it requires courts to give these assessments greater weight than anything else on the high court's list.

---

in predicting the Court of Criminal Appeals's future disposition. But we have found no reason to conclude that the reasoning in our opinion is infirm") (citation omitted).

*Conclusion*

The Court of Criminal Appeals's *Montalvo* precedent is on point. This court's panel opinion holding that courts primarily should consider the *Aviles* Factors in setting bail under article 44.04(h) goes against *Montalvo*. The en banc court should follow *Montalvo* out of obedience to binding precedent. But, even if *Aviles* did not conflict with *Montalvo*, this court, sitting en banc, should decide today to abandon the *Aviles* framework — to stop giving primary consideration to the *Aviles* Factors in bail-amount determinations under article 44.04(h). *Montalvo* should carry the day. Because it does not, I respectfully dissent.

/s/     Kem Thompson Frost
        Chief Justice

En Banc Court consists of Chief Justice Frost and Justices Boyce, Christopher, Jamison, Busby, Donovan, Brown, Wise, and Jewell.

Justices Boyce, Christopher, Jamison, Busby, Brown, Wise, and Jewell join the en banc, per curiam Order. Justice Donovan files a Dissent to En Banc Order Setting Bail. Chief Justice Frost files a Dissent to En Banc Order Setting Bail that Justice Donovan joins.

Publish — Tex. R. App. P. 47.2(b).