PER CURIAM
On May 22, 2018, this court rendered its judgment vacating the trial court's judgment and remanding to the juvenile court for further proceedings. We denied appellant's second motion for en banc reconsideration on July 24, 2018. As of the date of this order, a petition for discretionary review is pending in the Court of Criminal Appeals.
On May 31, 2018, appellant, Daron Taylor, filed a motion asking this Court to set reasonable bail. See Tex. Code Crim. Proc. Ann. art. 44.04(h). Article 44.04(h) of the Texas Code of Criminal Procedure states, in pertinent part:
If a conviction is reversed by a decision of a Court of Appeals, the defendant, if in custody, is entitled to release on reasonable bail, regardless of the length of term of imprisonment, pending final determination of an appeal by the state or the defendant on a motion for discretionary review. If the defendant requests bail before a petition for discretionary review has been filed, the Court of Appeals shall determine the amount of bail. The defendant's right to release under this subsection attaches immediately on the issuance of the Court of Appeals' final ruling....
We conclude that appellant is entitled to release on reasonable bail. See Tissier v. Kegans, 789 S.W.2d 680, 681 (Tex. App.-Houston [1st Dist.] 1990, no writ) (holding right to release matures when motion for rehearing is denied). We further conclude this Court is required to determine the amount of appellant's bail.
Our dissenting colleague contends that Article 44.04(h) does not apply because we "vacated"-rather than "reversed"-appellant's conviction. We disagree. This Court vacated appellant's conviction for the simple reason that the district court did not properly acquire jurisdiction due to deficiencies in the juvenile court transfer order. See Taylor v. State , 553 S.W.3d 94, 99 (Tex. App.-Houston [14th Dist.] 2018, pet. filed). That technical distinction has no relevance for purposes of setting a bond under Article 44.04(h). Regardless of whether our disposition is best described as a reversal or a vacatur, the judgment of conviction under which appellant has been confined will disappear if this Court's ruling stands, so a bond is necessary. Finally, the Court of Criminal Appeals has described the disposition in cases like this one as a "reversal of the juvenile court's transfer order,"[1] and this Court has described it as a "remand to the juvenile court for further proceedings."[2] In light of this reversal, appellant is entitled to release on reasonable bail.
We therefore turn to the amount of appellant's bail. The primary purpose of setting bail, both pretrial and post-appeal, "is to secure the presence of the accused." Aviles v. State , 26 S.W.3d 696, 698 (Tex. App.-Houston [14th Dist.] 2000, order). There are a number of factors we consider in making this determination. Article 17.15 of the Texas Code of Criminal Procedure requires courts to consider the following in making their determinations to set bail:
1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
*504 3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded, and proof may be taken upon this point.
5. The future safety of a victim of the alleged offense and the community shall be considered.
Tex. Code Crim. Proc. Ann. art. 17.15 (West 2015). The Court of Criminal Appeals has provided additional factors to consider that other courts have applied to setting bail:
(1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense.
Aviles , 26 S.W.3d at 698 (citing Ex parte Rubac , 611 S.W.2d 848, 849-50 (Tex. Crim. App. [Panel Op.] 1981) ).
Appellant asks this court to set his bond at $10,000. In support of his motion appellant claims he (1) has no history of fleeing or failing to appear in court; (2) is indigent; (3) was charged as a party to the offense of capital murder; and (4) does not pose a threat to the community. Appellant also points out that he was a juvenile at the time of the offense, and has a close family friend who maintains contact. Since appellant's arrest, his mother has returned to prison and his father has died. Appellant has lived in Houston his entire life, has no criminal record other than the pending charge, and has been in custody without bond since his arrest and conviction. Appellant argues that due to his youth and lack of sophistication he is not a flight risk.
In its response the State asks this court to set appellant's bond at $500,000. The State argues that a high bail amount is necessary due to the egregious circumstances of the offense, appellant's history of failing to follow court directives, appellant's lack of family support and community ties, and a prior bond forfeiture in a juvenile case.
The State argues that appellant presents a "clear danger" to the safety of the community. Specifically, the State references appellant's criminal history, which resulted in multiple murder charges while appellant was on probation for a weapons charge. The State highlights appellant's admission that he repeatedly fired a weapon while participating with fellow gang members in the murders.
The State also highlighted a previous failure to appear on a juvenile bond. The record reflects that appellant was scheduled to appear in criminal district court on May 21, 2013, on a burglary of a habitation charge. The charge was filed May 3, 2013, and appellant was released on a $10,000 bond. Appellant failed to appear, bond was revoked, and an alias capias was issued.
In setting bail following reversal and remand in the court of appeals, "the primary factors that should be considered by the court of appeals are (1) the fact that the conviction has been overturned; (2) the State's ability, if any, to retry the appellant; and (3) the likelihood that the decision of the court of appeals will be overturned." Aviles , 26 S.W.3d at 699.
Appellant's conviction was vacated, not reversed, by this court. As to the State's ability to seek a proper waiver of juvenile court jurisdiction and retry appellant, we fully expect the State will seek to do so. It is somewhat likely that, were the case to be retried in district court, the jury verdict *505 would be the same. In addition, appellant has not served more time than could be obtained upon conviction. Regarding the prospect of reversal of our decision, we, like our sister court of appeals, are reluctant to predict the future actions of the Court of Criminal Appeals, but we are confident that our analysis was thorough and properly applied the correct standard of review, and that our disposition of the case is correct under the law. See Werner v. State , 445 S.W.3d 301, 305 (Tex. App.-Houston [1st Dist.] 2013, order) (expressing same hesitation but indicating that "we have found no reason to conclude that the reasoning in our opinion is infirm").
Given these considerations, appellant's position now is much like his position was before his first trial. Accordingly, the trial court's decision on bail can guide us in considering the Aviles factors. See Werner , 445 S.W.3d at 306 (considering the amount of bail set before trial in setting bail pursuant to article 44.04(h) ).
Before appellant's trial for capital murder, the State filed a motion for denial of bail. In its motion the State argued that appellant was charged with capital murder, murder, and burglary. Appellant was alleged to have committed the offense with a deadly weapon and was accused of a violent offense while under the supervision of a criminal justice agency of the State. The trial court, "[u]pon a hearing and after considering the evidence presented," granted the State's motion for denial of bail for sixty days. On April 23, 2014, however, the trial court set appellant's bond at $250,000.
The record indicates that appellant's previous $10,000 bail amount when facing a burglary of a habitation charge was not sufficient to compel appellant to appear in court. Although the trial court initially denied bail, it later set a bond of $250,000. Article 44.04(h) states that appellant "is entitled to release on reasonable bail, regardless of the length of term of imprisonment, pending final determination of an appeal by the state or the defendant on a motion for discretionary review." See Tex. Code Crim. Proc. Ann. art. 44.04(h).
Considering the factors set out in Aviles , we set appellant's bail at $250,000. Any conditions on bail must be set by the trial court, and any sureties on bail must be approved by the trial court. See Tex. Code Crim. Proc. Ann. art. 17.40 & 44.04(h). We grant appellant's motion for bail, and order appellant, Daron Taylor, released on bail upon his giving good and sufficient bond, signed by appellant as principal and with sureties as required by law, in the sum of $250,000 pending final disposition on remand.
( Frost, C.J., dissenting).
DISSENT TO ORDER SETTING BAIL
Kem Thompson Frost, Chief Justice
This court lacks the authority under article 44.04(h) of the Texas Code of Criminal Procedure to grant appellant Daron Taylor bail pending review in the Court of Criminal Appeals. The majority holds otherwise and sets bail using criteria that undermine binding precedent. For these reasons, I respectfully dissent.
Availability of Bail
A defendant tried as an adult generally has a constitutional right to reasonable bail before trial.[1] A defendant convicted and sentenced as an adult has no constitutional right to reasonable bail if the court of appeals reverses or vacates the conviction, although the Legislature may provide for *506 bail by statute.[2] A respondent in juvenile court has no constitutional or statutory right to bail either before or after the adjudication hearing or the disposition hearing.[3] Though the juvenile proceedings are not criminal proceedings, the adjudication hearing is analogous to the guilt/innocence phase of a criminal trial, and the disposition hearing is analogous to the punishment phase of a criminal trial.[4]
Interpretation of Article 44.04(f)
The outcome of today's case turns on this court's application of article 44.04(h), which provides:
If a conviction is reversed by a decision of a Court of Appeals, the defendant, if in custody, is entitled to release on reasonable bail, regardless of the length of term of imprisonment, pending final determination of an appeal by the state or *507 the defendant on a motion for discretionary review. If the defendant requests bail before a petition for discretionary review has been filed, the Court of Appeals shall determine the amount of bail. If the defendant requests bail after a petition for discretionary review has been filed, the Court of Criminal Appeals shall determine the amount of bail. The sureties on the bail must be approved by the court where the trial was had. The defendant's right to release under this subsection attaches immediately on the issuance of the Court of Appeals' final ruling as defined by Tex. Cr. App. R. 209(c).[5]
Under the canons of statutory construction, we are to interpret a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the Legislature could not have intended.[6] We are to focus on the literal text, reading it in context and construing it "according to the rules of grammar and common usage."[7] In an attempt to discern the fair, objective meaning of the text at the time of its enactment, we are to presume every word has been used for a purpose and we are to give each word, phrase, clause, and sentence effect if it is reasonably possible to do so.[8] We are not to add or subtract from the statute.[9] Only in the rare, absurd-results scenario may the court stray from this model and, even then, only out of absolute necessity.[10]
Under article 44.04(h) 's plain language, the Legislature has not given this court authority to grant appellant reasonable bail pending review in the Court of Criminal Appeals. The statute provides that a defendant, if in custody, is entitled to release on reasonable bail, pending final determination of an appeal by the state or the defendant on a motion for discretionary review "[i]f a conviction is reversed by a decision of a Court of Appeals."[11] This statute also provides that the sureties on the bail set by the appellate court must be approved by the court that tried the case.[12]
Under Texas Rule of Appellate Procedure 43.2, entitled "Types of Judgment," a court of appeals may dispose of an appeal in one of the following ways:
(1) affirm the trial court's judgment in whole or in part;
(2) modify the trial court's judgment and affirm it as modified;
(3) reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;
(4) reverse the trial court's judgment and remand the case for further proceedings;
(5) vacate the trial court's judgment and dismiss the case; or
(6) dismiss the appeal.[13]
Under the unambiguous language of article 44.04(h), bail under that statute is available only in the third and fourth scenarios.
In today's case, this court did not reverse appellant's conviction. Neither the third nor the fourth scenario is in play. The court instead opted to "vacate the judgment of the criminal district court, dismiss the case in that court, and declare that the case is still pending in the juvenile court."[14] So, under the plain text of article 44.04(h), appellant is not entitled to release on reasonable bail under this statute.
Because this court vacated the trial court's judgment and dismissed the trial-court case rather than reverse the conviction, this court lacks the power to set the amount of reasonable bail under article 44.04(h). But, that does not leave appellant without the possibility of release on bail. Appellant may seek bail through an original habeas-corpus action in the Court of Criminal Appeals.[15]
Applying the statute's plain language would not lead to absurd consequences that the Legislature could not possibly have intended. Indeed, the statutory regime shows good reason for the Legislature to have chosen the path of not mandating release on reasonable bail if the court of appeals vacates the judgment and dismisses the case in the trial court.
Any bail after conviction, and the sureties on the bail bond, must be approved by the court "where trial was had."[16] Bail is sufficient if it substantially meets the requirements of the Code of Criminal Procedure.[17] In today's case, if the Court of Criminal Appeals denies review, or grants review and affirms this court's judgment, either action would render the proceedings in the district court void ab initio because the court lacked subject-matter jurisdiction, and under the judgment and mandate of this court or the high court, appellant's case would be before the juvenile court in the pre-adjudication-hearing stage - a stage at which appellant has no right to be released. Moreover, the juvenile court has *508 discretion to order appellant detained if the court finds one or more of the following:
(1) he is likely to abscond or be removed from the jurisdiction of the court;
(2) suitable supervision, care, or protection for him is not being provided by a parent, guardian, custodian, or other person;
(3) he has no parent, guardian, custodian, or other person able to return him to the court when required;
(4) he may be dangerous to himself or may threaten the safety of the public if released; or
(5) he previously has been found to be a delinquent child or previously has been convicted of a penal offense punishable by a term in jail or prison and is likely to commit an offense if released.[18]
Given appellant's circumstances - involvement in two capital murders, one parent deceased, and one parent in prison - there appear to be grounds for the juvenile court to deny appellant release.
The statutory scheme itself confirms that our lawmakers did not contemplate bail availability in the context of this case. Defined in article 17.02, "bail bond" is "a written undertaking entered into by the defendant and the defendant's sureties for the appearance of the principal therein before a court or magistrate to answer a criminal accusation."[19] If appellant were eligible for release under article 44.04(h), in posting his bail bond, appellant necessarily would undertake to appear "before a court or magistrate to answer a criminal accusation ."[20] Yet, there is no criminal accusation in the juvenile court.[21]
In sum, concluding that this court cannot grant appellant release under article 44.04(h) does not mandate his release from confinement, nor does it mean that appellant has no other avenue to seek release on reasonable bail pending further court action. It simply means that appellant did not meet eligibility for bail under the legislatively-created criteria in article 44.04(h), and this court lacks authority under that statute to grant bail.
The majority asserts that if this court's vacatur of the trial court's judgment stands, the judgment of conviction under which appellant has been confined will disappear, and therefore appellant must be released on bond.[22] But, once this court's judgment takes effect, appellant will be under the jurisdiction of the juvenile court, and appellant will have no constitutional right to release on bail.[23] In any event, appellant has the ability to seek release on bail through an original habeas-corpus action in the Court of Criminal Appeals.[24] The majority does not explain why a release on bail must be available to appellant under article 44.04(h) even if he does not satisfy the legislatively created criteria for release on bail under that statute.
Citing the Court of Criminal Appeals's opinion in Moon v. State ,[25] the majority incorrectly states that the high court has described the disposition in cases like this *509 one as a "reversal of the juvenile court's transfer order."[26] The Moon court described the disposition in the case before it as follows: "the court of appeals vacated the district court's judgment of conviction, dismissed the criminal proceedings, and declared the case to be still 'pending in the juvenile court.' "[27] In the footnote the majority cites for support, the Moon court did not describe the disposition in the case as a "reversal of the juvenile court's transfer order"; rather, the Moon court stated that it was leaving for the juvenile court's determination the issue of what procedural options were available in this context.[28] The high court also noted a statutory alternative under Texas Family Code section 54.02(j) that might be available "assuming that the state can satisfy the criteria under Section 54.02(j)."[29] Rather than describe the disposition as a "reversal of the juvenile court's transfer order," the high court noted that the procedure under section 54.02(j)might be available if the state could satisfy all criteria under section 54.02(j), one of which is that "a previous transfer order was reversed by an appellate court or set aside by a district court."[30]
The majority also notes that in Guerrero v. State , this court described its judgment as including a remand to the juvenile court, even though the appeal was from a conviction in the district court.[31] The Guerrero court described the judgment in that case, not the judgment in today's case.[32] We did not purport to remand Taylor's case to the juvenile court.[33]
Neither Moon nor Guerrero change the fact that this court lacks authority to grant release on reasonable bail under article 44.04(h).
Despite this court's lack of authority to grant release, the majority undertakes to set reasonable bail. In doing so, the majority applies the wrong legal standard.
The Legal Standard for Setting Reasonable Bail
The Court of Criminal Appeals, in Montalvo v. State , applied a multi-factor balancing test to set the amount of reasonable bail under article 44.04(h).[34] A decade later, in Aviles v. State, a panel of this court came up with its own standard, one that makes no mention of Montalvo and instead mandates consideration of three super-criteria for the 44.04(h) determination:
(1) the fact that the conviction has been overturned;
(2) the State's ability, if any, to retry the appellant; and
(3) the likelihood that the decision of the court of appeals will be overturned.[35]
The legal standard the Aviles court created with these super-criteria conflicts with the high court's Montalvo precedent because *510 the Montalvo court did not say that courts should give primary consideration to any factors or that any factor was a primary factor.[36] The Montalvo court did not mention any of the factors that make up the Aviles super-criteria.
In Montalvo , the intermediate court of appeals reversed the defendant's conviction, and the defendant sought release on bail under article 44.04(h) after the State filed a petition for discretionary review by the Court of Criminal Appeals.[37] Because the defendant made the bail request after the State sought high-court review, article 44.04(h) required the Court of Criminal Appeals to determine the amount of reasonable bail.[38]
In considering reasonable bail, the Montalvo court listed, and the defendant thoroughly detailed, the following criteria: (1) the nature of the offense, (2) the ability to make bail, (3) defendant's prior criminal record, (4) defendant's employment record, (6) defendant's family and community ties, (7) the defendant's length of residency in the community.[39] The Montalvo court stated that other factors might be relevant in determining the amount of reasonable bail under article 44.04(h),[40] and then set the bail amount using the listed factors.[41]
Though some parts of Aviles are consistent with Montalvo ,[42] the part of Aviles that introduces the three super-criteria[43] conflicts with the Montalvo precedent because the Court of Criminal Appeals did not state that courts should give primary consideration to any factor.[44] In creating a new layer of factors for the 44.04(h) bail determination and elevating those factors above everything else on the high court's list,[45] the Aviles court undermined the Montalvo standard. Because the Montalvo precedent is on point and the Aviles super-criteria run afoul of Montalvo,[46] principles of vertical stare decisis demand that this court follow Montalvo rather than apply the Aviles super-criteria.[47] Moreover, because this court has never purported to interpret, apply, or distinguish the Montalvo standard when applying the Aviles super-criteria, neither Aviles nor cases applying the Aviles super-criteria are binding precedent in this court.[48] Even an en *511 banc opinion cannot trump the high court's Montalvo precedent.[49]
The Majority's Application of the Aviles Super-Criteria
The majority chooses today's bail amount by looking primarily to the Aviles super-criteria. Yet, these criteria - the factors the majority deems most important to the analysis - have little, if any, relation to the ultimate goal of setting reasonable bail. The first super-criterion will be satisfied 100% of the time in every case in which an appellant is entitled to bail under 44.04(h),[50] so why make it a factor at all? The other two super-criteria require the court to speculate about what might happen in the high court and what might happen on remand in the trial court.[51] Why elevate this guesswork over facts, such as the defendant's work history, criminal record, family and community ties, and other fact-based criteria that make up the Montalvo balancing test?
In the race for fairness and transparency, fact-based decision-making outruns guess-based decision-making every time. By giving primacy to the Aviles super-criteria, the majority deprives both appellants and the public their due under the high court's Montalvo framework.

Moon v. State , 451 S.W.3d 28, 52 n.90 (Tex. Crim. App. 2014).

Guerrero v. State , 471 S.W.3d 1, 4 (Tex. App.-Houston [14th Dist.] 2014, no pet.).

See Tex. Const. art. I, § 11.

See Dallas v. State , 983 S.W.2d 276, 278 n.1 (Tex. Crim. App. 1998), disapproved of on other grounds by Ex parte Anderer , 61 S.W.3d 398, 405 & n.33 (Tex. Crim. App. 2001).

See Tex. Fam. Code Ann. §§ 53.02, 54.01, 56.01 (West, Westlaw through 2017 1st C.S.); Espinosa v. Price , 144 Tex. 121, 188 S.W.2d 576, 577 (1945) ; Ex parte D.W.C. , 1 S.W.3d 896, 897 (Tex. App.-Beaumont 1999, pet. denied) ; In re S.L.L. , 906 S.W.2d 190, 193 (Tex. App.-Austin 1993, no writ).

See In re B.D.S.D. , 289 S.W.3d 889, 893 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).

Tex. Code Crim. Proc. Ann. art. 44.04(h) (West, Westlaw through 2017 1st C.S.).

Tapps v. State , 294 S.W.3d 175, 177 (Tex. Crim. App. 2009).

Id.

Id.

Id.

Id.

Tex. Code Crim. Proc. Ann. art. 44.04(h) (emphasis added).

See id.

Tex. R. App. P. 43.2.

Taylor v. State , 553 S.W.3d 94, 100 (Tex. App.-Houston [14th Dist.] 2018, pet. filed).

See Ex parte Borgen , 646 S.W.2d 450, 451 (Tex. Crim. App. 1983).

Tex. Code Crim. Proc. Ann. art. 44.04(e) (West, Westlaw through 2017 1st C.S.).

Id.

See Tex. Fam. Code Ann. § 53.02(b).

Texas Code of Criminal Procedure 17.02.

Tex. Code Crim. Proc. Ann. art. 17.02 (emphasis added); see itation index="28" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%C2%A7%2053.02">id. art. 44.04(e).

See Espinosa , 188 S.W.2d at 577 ; Ex parte D.W.C. , 1 S.W.3d at 897.

See ante at 503-04.

See Tex. Fam. Code Ann. §§ 53.02, 54.01, 56.01 ; Espinosa , 188 S.W.2d at 577 ; Ex parte D.W.C. , 1 S.W.3d at 897 ; In re S.L.L. , 906 S.W.2d at 193.

See Ex parte Borgen , 646 S.W.2d at 451.

451 S.W.3d 28 (Tex. Crim. App. 2014).

Ante at 503-04.

Moon , 451 S.W.3d at 36.

See id. at 52, n.90.

Id. ; see Tex. Fam. Code Ann. § 54.02 (West, Westlaw through 2017 1st C.S.).

Tex. Fam. Code Ann. § 54.02(j) ; see Moon , 451 S.W.3d at 52, n.90.

Guerrero v. State , 471 S.W.3d 1, 4 (Tex. App.-Houston [14th Dist.] 2014, no pet.) (stating that the district court's judgment "is vacated, the case in that court is dismissed, and the cause is remanded to the juvenile court for further proceedings") (emphasis added).

See ids="10010278" index="44" url="https://cite.case.law/sw2d/786/710/#p710">id.

See Taylor v. State , 553 S.W.3d at 100.

See Montalvo v. State , 786 S.W.2d 710, 710-11 (Tex. Crim. App. 1989).

26 S.W.3d 696, 698-99 (Tex. App.-Houston [14th Dist.] 2000, published order).

See id.

See ids="10010278" index="49" url="https://cite.case.law/sw2d/786/710/#p710">id.

See Tex. Code Crim. Proc. Ann. art. 44.04(h).

See Montalvo , 786 S.W.2d at 711.

See id.

See ids="10010278" index="52" url="https://cite.case.law/sw2d/786/710/#p710">id.

The Aviles court concluded that in making the 44.04(h) determination, courts should consider the five factors listed in Code of Criminal Procedure article 17.15 (rules for fixing amount of bail), Tex. Code Crim. Proc. Ann. art. 17.15 (West, Westlaw through 2017 1st C.S.), as well as the following factors: "(1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense."Aviles , 26 S.W.3d at 698. These parts of Aviles are consistent with Montalvo . See Montalvo , 786 S.W.2d at 711.

See Aviles , 26 S.W.3d at 699.

See Montalvo , 786 S.W.2d at 711.

See Aviles , 26 S.W.3d at 698-99.

See Montalvo , 786 S.W.2d at 711 ; Aviles , 26 S.W.3d at 698-99.

See Glassman v. Goodfriend , 347 S.W.3d 772, 781 & n.8 (Tex. App.-Houston [14th Dist.] 2011, pet. denied) (en banc).

See Glassman , 347 S.W.3d at 781 & n.8 (explaining that this court is not bound by a prior holding of this court if the prior holding conflicts with a decision from a higher court that is on point). Recently, this court, sitting en banc, set bail under article 44.04(h) using the Aviles super-criteria, but the en banc court did not purport to interpret, apply, or distinguish the Montalvo standard. See Foreman v. State , --- S.W.3d ----, ----, 2018 WL 5075156, at *1-2 (Tex. App.-Houston [14th Dist.] Oct. 18, 2018, published order).

See Glassman , 347 S.W.3d at 781 & n.8 (noting that this court is not bound by a prior holding of this court that conflicts with an on-point decision from a higher court).

See Aviles , 26 S.W.3d at 698-99.

See ids="10010278" index="65" url="https://cite.case.law/sw2d/786/710/#p710">id.